No. 19       May 31, 2024       363

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

STEPHEN ANDREW ARANDA,
*Respondent on Review.*

(CC 19CR07375) (CA A171800) (SC S069641)

On review from the Court of Appeals.*

Argued and submitted February 1, 2023.

Patrick M. Ebbett, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

David L. Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for respondent on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Aliza B. Kaplan, Lewis & Clark Law School, Portland, filed the brief on behalf of *amici curiae* Coalition for Prior Conviction Impeachment Reform, Boston University Center for Antiracist Research, and Criminal Justice Reform Clinic at Lewis & Clark Law School. Also on the brief was Anna K. Sortun, Tonkon Torp LLP, Portland.

Rosalind M. Lee, Rosalind Manson Lee LLC, Eugene, and Monica Milton, Public Defense Counsel, National Association of Criminal Defense Lawyers, Washington, D.C., filed the brief on behalf of *amici curiae* Oregon Criminal Defense Lawyers Association and National Association of Criminal Defense Lawyers, respectively.

_____
* Appeal from Lane County Circuit Court, Charles Zennaché, Judge. 319 Or App 178, 509 P3d 152 (2022).

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, and Masih, Justices, and Walters and Nakamoto, Senior Judges, Justice pro tempore.**

DEHOOG, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

Walters, S.J., dissented and filed an opinion, in which Duncan, and Masih, JJ., joined.

_____

** Nelson, J., resigned February 25, 2023, and did not participate in the decision of this case. Bushong and James, JJ., did not participate in the consideration or decision of this case.

**DEHOOG, J.**

Oregon Evidence Code (OEC) 609(1) expressly requires a trial court to allow the credibility of a witness to be impeached with evidence that the witness has been convicted of any felony. That rule applies to all witnesses, including criminal defendants who testify in their own behalf. The text of OEC 609 does not allow a trial court to weigh the probative value of a witness's conviction history against its potential for unfair prejudice, nor does it grant courts discretion to exclude evidence based on the results of such balancing. Moreover, under our case law, trial courts may not subject OEC 609 evidence to that assessment under OEC 403, which, when applicable, provides for such balancing. *See State v. King*, 307 Or 332, 336-37, 768 P2d 391 (1989) (OEC 609 does not permit trial courts to conduct OEC 403 balancing).[1]

Nonetheless, relying on our decisions in *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), and *State v. Baughman*, 361 Or 386, 393 P3d 1132 (2017), and also on the Due Process Clause of the Fourteenth Amendment to the United States Constitution, defendant contends—as he has consistently contended at all stages of this case—that OEC 403 balancing is required upon a criminal defendant's request whenever the state seeks to impeach the defendant's testimony with OEC 609(1) evidence. The Court of Appeals agreed with that argument and, because the trial court had declined to conduct OEC 403 balancing in his case, reversed defendant's conviction and remanded to the trial court to conduct that balancing. *State v. Aranda*, 319 Or App 178, 189-90, 509 P3d 152 (2022).

---

[1] When applicable, OEC 403 permits trial courts to exclude evidence upon determining that its "probative value is substantially outweighed by the danger of unfair prejudice[.]" We review the decision whether to exclude evidence on that basis for an abuse of discretion. *See State v. Rogers*, 330 Or 282, 311, 4 P3d 1261 (2000) ("A decision to exclude evidence under OEC 403 is reserved to the trial court's discretion. That is so because application of OEC 403 may allow for more than one legally correct outcome. For example, in some cases, the record may support either the admission or exclusion of otherwise admissible evidence under OEC 403, and neither result legally would be incorrect.") (internal ellipses and citations omitted). In this opinion, we refer to the application of OEC 403 in accordance with its terms—that is, balancing the probative value of evidence against its potential for unfair prejudice and making the discretionary decision whether to exclude the evidence—as "OEC 403 balancing."

On review, the state contends that the Court of Appeals erred. In the state's view, the admission of evidence that satisfies the requirements of a state evidentiary rule— including OEC 609—does not violate due process. It follows, the state reasons, that due process did not require the trial court to conduct OEC 403 balancing to protect defendant's due process rights.[2] The state further argues that the Court of Appeals' conclusion that due process required OEC 403 balancing in defendant's case reflects a misunderstanding of our decisions in *Williams* and *Baughman*.

We conclude that the Court of Appeals erred, but we do so on more limited grounds than those advanced by the state. Before explaining that conclusion, we will briefly address an argument that defendant raises in his sur-reply brief, namely, that we should affirm the Court of Appeals' decision as being "right for the wrong reason." *See, e.g.*, *State v. Edmonds*, 364 Or 410, 415, 435 P3d 752 (2019) (explaining that "the right for the wrong reason doctrine" permits a lower court's ruling to be affirmed on grounds the court did not consider, provided certain conditions are met). We ultimately decline defendant's "right for the wrong reason" argument and, instead, adhere to this court's holding in *King*, in which we held that OEC 609 does not permit trial courts to subject evidence admissible under its terms to OEC 403 balancing. 307 Or at 336-37. Then, turning to defendant's contention that OEC 403 balancing is nonetheless required as a matter of due process, we conclude, after applying the applicable United States Supreme Court framework, that defendant's contention is unfounded. Although we recognize that the absence of balancing under either OEC 609 or OEC 403 means that some defendants who wish to testify in their own trials must make a difficult choice—one that effectively balances the benefits of testifying against the potential consequences of having their testimony impeached by any qualifying conviction history they have—we cannot conclude that due process requires OEC 403 balancing before such

---

[2] We do not understand the state to argue that, if in fact evidence admissible under the terms of OEC 609 *would* violate defendant's right to due process, the trial court would nonetheless be required to admit that evidence due to the mandatory language of OEC 609 (stating that evidence that meets requirements of rule "shall be admitted").

evidence may be admitted. As a result, the Court of Appeals erred in holding that OEC 403 balancing is a constitutional requirement, and we, therefore, affirm the judgment of conviction.

## I.   FACTS AND PROCEDURAL POSTURE

### A.   *Facts and Trial Court Proceedings*

In 2019, defendant was charged with first-degree rape after the victim reported that he had forcibly subjected her to sexual intercourse. The charged conduct took place following a birthday party at which both defendant and the victim had been guests. Although numerous other guests from the party testified at trial about the victim and defendant's interactions, many of the guests had been drinking at the party, and their testimony varied dramatically regarding those interactions.

Defendant did not dispute that he had engaged in sexual conduct with the victim; the issue at trial was whether that conduct had been consensual, and defendant intended to take the stand to testify that it had been. Defendant anticipated, however, that, when he took the stand, the state would seek to impeach his credibility by introducing evidence under OEC 609 that, in 2008, he had been convicted of multiple felonies in two separate cases. In one case, defendant had pleaded no contest to two counts of first-degree sexual abuse for events that had occurred in 2002, when he was 15. In a second case, defendant had pleaded no contest to second-degree assault for events arising out of an alcohol-related car accident.

As discussed in greater detail later in this opinion, OEC 609(1) permits any witness to be impeached with evidence that the witness has previously been convicted of a felony[3] or a crime involving a false statement or dishonesty:

"(1)   For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of

---

[3] As in prior decisions, we use the term "felony" as shorthand for convictions rendered admissible by OEC 609(1)(a) (applying to convictions for crimes "punishable by death or imprisonment in excess of one year under the law under which the witness was convicted"). *See, e.g.*, *State v. Phillips*, 367 Or 594, 599 n 4, 482 P3d 52 (2021) (so explaining).

a crime shall be admitted if elicited from the witness or established by public record, but only if the crime:

"(a) Was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted; or

"(b) Involved false statement or dishonesty."

Before trial, defendant filed a motion *in limine*, seeking to limit the state's introduction of OEC 609 evidence to impeach his testimony. Relying on the Due Process Clause of the Fourteenth Amendment to the United States Constitution, defendant contended that, unless the trial court first engaged in OEC 403 balancing regarding his convictions for first-degree sexual assault and second-degree assault, admitting that evidence as impeachment under OEC 609 would violate his right to due process. When applicable, OEC 403 grants trial courts the discretion to exclude otherwise relevant evidence as follows:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

At the motion hearing, defendant acknowledged that this court had previously held as a matter of statutory interpretation that evidence admissible under OEC 609(1) is not subject to OEC 403 balancing. *See King*, 307 Or at 336-37 (so holding). Defendant contended, however, that OEC 403 balancing was required as a matter of due process. He relied on this court's decision in *Williams*, 357 Or 1, contending that we held in that case that due process requires courts to conduct OEC 403 balancing before admitting "other acts" evidence under OEC 404(4). *See* OEC 404(4) (providing in part that, "[i]n criminal actions, evidence of other crimes, wrongs, or acts by the defendant is admissible if relevant except as otherwise provided by" various other rules of law, including, "to the extent required by the United States Constitution[,]" OEC 403). Defendant argued that, to prevent undue prejudice, even if the trial court did not wholly exclude his conviction history, it should at least limit the impeachment evidence to the fact of the felony convictions

and prohibit any naming of the specific crimes for which he had been convicted.

In response, the state indicated that it did not intend to offer defendant's prior convictions for any purpose other than impeachment. The state also explained that it would be asking defendant only whether he had been convicted of one count of second-degree assault and two counts of first-degree sexual abuse; it did not intend to otherwise mention the specific convictions by name.

The trial court denied defendant's motion to limit the state's introduction of OEC 609 evidence to impeach his testimony. The court explained its understanding that, if defendant took the stand, OEC 609(1)(a) would allow the state to impeach him with his prior convictions, which would be admissible solely for purposes of attacking his credibility. The court further explained that no other rule of evidence or provision of the Oregon Constitution required it to balance the potentially prejudicial effect of that evidence against its probative value. Moreover, the trial court stated, it was settled law in Oregon that the state could identify defendant's convictions by name; it would not be limited to letting the jury know that defendant had been convicted.

In rejecting defendant's argument that OEC 403 balancing was required under the federal constitution as a matter of due process, the trial court explained that, in its view, there were three reasons not to extend the reasoning of *Williams*, 357 Or at 4, to defendant's case. First, in *Williams*, the state had sought to use "other acts" evidence in its case-in-chief. Here, in contrast, the state would not be permitted to introduce defendant's conviction history unless he chose to take the stand; defendant, therefore, controlled whether the jury heard that evidence. Second, the court explained, it would be instructing the jurors that they could consider defendant's conviction history for only its bearing, if any, on his credibility. The court added that jurors were presumed to know their obligations and to follow instructions, and so could be expected to follow them here. And third, the court noted, defendant had been unable to identify any other jurisdiction that had held that due process required balancing in the impeachment context.

Before any evidence of defendant's conviction history was introduced at trial, the court gave a precautionary instruction telling the jury that it was not to consider that evidence except for purposes of assessing defendant's credibility:

"If you find the defendant has previously been convicted of a crime, you may consider this conviction only for its bearing, if any, on the credibility of the defendant. Specifically, you may not use this evidence for the purpose of drawing the inference that[,] because the defendant was convicted of a previous crime, the defendant may be guilty of the crime charged in this case."

Defense counsel entered a continuing objection to any identification by name of the felonies for which defendant had been convicted. When defendant took the stand for direct examination, he acknowledged that he had previously been convicted of three felonies, but he did not identify any conviction by name.[4] The state, in turn, asked defendant the following questions on cross-examination:

"Q   These *** prior convictions that you have back in 2008, isn't it correct that one of them is for Assault in the Second Degree, a felony?

"A   Yes, sir.

"Q   And the other two are for Sexual Abuse in the First Degree, both felonies?

"A   Yes, sir."

In its closing instructions to the jury, the trial court again stated that prior convictions were to be used for only purposes of assessing credibility: "If you find that a witness has been convicted of a crime, you may consider this conviction only for its bearing, if any, on the credibility of the witness."

---

[4] The exchange between defense counsel and defendant was as follows:

"Q  Okay. And—*** well, sir, have you ever been convicted of any felony offenses in Linn County Circuit Court, say, I think in *** 2008, like August of 2008?

"A  Yes.

"Q  And there were three ** * felony offenses?

"A  Yes."

The state itself made that point in its closing argument:

"In your final instructions there—I think it made it into the preliminary, too—but in your final instructions there you see this other one about the defendant's prior felony convictions. These can only be used by you to determine whether the defendant is a credible witness; that is, whether you believe him or not, okay?"

Although the state had previously named defendant's felony convictions, it did not remind the jury of the specific crimes of conviction during closing argument. The state also focused during closing on how the conviction history bore on the issue of witness credibility, implicitly contrasting defendant's conviction history with that of the witnesses against him, who had no conviction history:

"It's just not like we have two people come and say this and we walk out of here. But I just want you to say to yourselves when you're sitting there saying, 'Do I believe [witness KZ]? Do I believe [witness JM]? Do I believe [witness DP]? Do I believe [witness RC]? Do I believe [witness MA]?' Ask yourselves whether they have any of those felony convictions when you're making that determination."

The jury ultimately convicted defendant of first-degree rape.

B.    *Court of Appeals Decision*

Defendant appealed his conviction and raised a number of issues in the Court of Appeals. That court agreed with defendant's due process argument and, on that basis, vacated his conviction and remanded for further proceedings. The court expressly rejected defendant's remaining arguments without discussion. 319 Or App at 179.

In considering whether the trial court had violated defendant's due process rights by admitting his conviction history without first conducting OEC 403 balancing, the Court of Appeals explained that resolving that question required it to determine how the United States Supreme Court would itself resolve the issue. *Id*. at 182. That, according to the Court of Appeals, depended primarily on historical

practice. *Id*. (so stating); *id*. at 184 (relevant focus is national practice).

In reviewing historical practice, the Court of Appeals first observed that, at common law, any person who had previously been convicted of an "infamous crime" was wholly prohibited from testifying—as a result, historically there had been *no* practice regarding impeachment by prior conviction. *Id*. at 184. Further developments in the law abolished the rule that such persons were incompetent to testify, but their conviction history became admissible as impeachment evidence. *Id*. at 184-85. The Court of Appeals observed that, although that development meant that testifying defendants faced a substantial risk of prejudice when such evidence was admitted, the historical record did "not provide a definitive answer as to whether the Due Process Clause requires a trial court" to balance prejudice against probative value. *Id*. at 185-86. The court specifically noted an absence of federal cases since the adoption of Federal Rule of Evidence (FRE) 609, which specifically provides for balancing, and it observed that Oregon "appears to be an outlier" when compared to other states, most of which also had adopted the federal approach. *Id*. at 187-88.

Because of its conclusion that history failed to provide a clear answer, the Court of Appeals turned to "'the principles that animate the Due Process Clause,'" *id*. at 188 (quoting *Williams*, 357 Or at 18), including that due process prohibits the "admission of evidence that is so extremely unfair that it violates fundamental conceptions of justice," *id*. at 188-89 (internal quotation marks and citations omitted). The court recognized the risk that a jury might misuse a defendant's prior conviction to find the defendant guilty on the ground that the defendant has a propensity to commit crimes, rendering the defendant's trial fundamentally unfair. *Id*. at 189. Allowing trial court discretion to exclude unfairly prejudicial evidence would, in the Court of Appeals' opinion, "ensure" that the jury did not misuse the evidence. *Id*. at 190. It followed, in that court's view, that due process *required* balancing so as to protect against that possibility. *Id*.

The state sought review, which we allowed.

## II.  DISCUSSION

### A.  *Defendant's Challenge to* State v. King

As a preliminary matter, we address defendant's argument that the Court of Appeals' decision can be affirmed as being "right for the wrong reason." *See Edmonds*, 364 Or at 415 (explaining "the 'right for the wrong reason' doctrine"). On review, defendant argues for the first time that this court's decision in *King*, 307 Or 332, was incorrectly decided and should therefore be overruled. He argues that OEC 609, properly understood, remains subject to OEC 403 balancing. Therefore, in his view, there is no need for us to reach the question whether OEC 403 balancing is constitutionally required, as the Court of Appeals held.

The state disputes defendant's argument on two grounds. Procedurally, the state objects that such an issue should not be raised for the first time in a sur-reply brief. Substantively, the state maintains that *King* was correctly decided.

We need not decide the procedural question, because defendant has not established a basis to overrule *King*. We have previously explained that "we begin with the assumption that issues considered in our prior cases are correctly decided, and the party seeking to change a precedent must assume responsibility for affirmatively persuading us that we should abandon that precedent." *Farmers Ins. Co. v. Mowry*, 350 Or 686, 698, 261 P3d 1 (2011) (internal quotation marks and citation omitted). Here, defendant has not meaningfully undertaken that task, much less established that this court's decision in *King* was wrongly decided.

The enactment history of the rules at issue here compels that conclusion. The versions of OEC 609 and OEC 403 adopted in 1981, predating our 1989 decision in *King*, each contained provisions for balancing an evidentiary item's potential for prejudice against its probative value, but the provisions differed from each other. *Compare* OEC 403 (1982) (evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"), *with* OEC 609(1) (1982) (impeachment with prior criminal conviction permitted "only if" "the court determines that the probative value

of admitting this evidence outweighs its prejudicial effect to the defendant"). *See* Laird C. Kirkpatrick, *Oregon Evidence*, Art VI, Rule 609, 251 (1st ed 1982) ("Rule 609 requires that the probative value outweigh the prejudice before the prior conviction may be admitted, whereas Rule 403 requires that the probative value of evidence be substantially outweighed by prejudice before it will be excluded."); *State v. Pratt*, 316 Or 561, 572, 853 P2d 827 (1993) ("OEC 609 provided its own test for balancing probative value against prejudicial effect," separate from that found in OEC 403). By adopting different balancing tests for prejudice under the two rules, the legislature signaled that it did not intend for the more generally applicable test under OEC 403 to apply to cases subject to the specific balancing test contained in OEC 609(1).

In 1986, the voters passed an initiative that amended OEC 609 to remove that rule's balancing test. Or Laws 1987, ch 2, § 9. That amendment thus removed the only balancing test for prejudice that expressly applied to evidence offered to impeach the testimony of criminal defendants. Defendant does not contend that the 1986 amendment affirmatively extended the OEC 403 balancing test for prejudice to fill that gap.[5] Nor does defendant explain why, in his view, this court was mistaken to conclude in *King* that the voters did not intend that the impeachment evidence that they had just rendered admissible *without* balancing under OEC 609 would now be *subject to balancing* under OEC 403.

In the absence of a focused argument that our decision in *King* was the product of a flawed analysis or was otherwise wrongly decided, we are not persuaded that we should reconsider that decision. Accordingly, we proceed with the understanding that evidence admissible under the

---

[5] Defendant does contend that our later decision in *Pratt*, 316 Or 561, in which we held that OEC 403 balancing is appropriate when evidence is challenged as cumulative, is inconsistent with *King*. Defendant misreads *Pratt*, however. In that opinion, this court held that the 1986 amendment to OEC 609 removed balancing as to prejudice, but not balancing as to the needless presentation of cumulative evidence. *Id*. at 573. OEC 403 had merely codified the common-law discretion to exclude cumulative evidence. *Id*. The removal of OEC 609 balancing for prejudice, we concluded, did not affect the court's authority to balance cumulative evidence under OEC 403. *Id*. In *Pratt*, the court acknowledged *King*, but it expressly distinguished it on that ground. *Id*. at 572.

terms of OEC 609(1)—as the impeachment evidence in this case indisputably was—is not subject to balancing under OEC 403 *unless* such balancing is constitutionally required, the question to which we now turn.

B.  *Constitutional Question*

As noted above, the trial court held that no provision of the Oregon Evidence Code or the Oregon Constitution required it to conduct balancing before admitting evidence of defendant's conviction history. In adhering to this court's decision in *King*, we have now rejected defendant's challenge to that ruling under the evidence code, and defendant has not advanced an argument under the Oregon Constitution on appeal. Thus, the remaining issue before us is purely one of federal constitutional law—specifically, the question whether due process requires OEC 403 balancing in cases such as this.

"[W]hen interpreting the federal constitution or applying [United States] Supreme Court rulings that are based on its interpretation of the federal constitution, we must comply with what the Supreme Court has stated." *Page v. Palmateer*, 336 Or 379, 386, 84 P3d 133, *cert den*, 543 US 866 (2004) (citing cases). We cannot interpret the United States Constitution so as to extend its guarantees beyond any limits recognized by the Supreme Court. *See Arkansas v. Sullivan*, 532 US 769, 772, 121 S Ct 1876, 149 L Ed 2d 994 (2001) (rejecting Arkansas Supreme Court's holding "that it may interpret the United States Constitution to provide greater protection than this Court's own federal constitutional precedents provide"); *Oregon v. Hass*, 420 US 714, 719, 95 S Ct 1215, 43 L Ed 2d 570 (1975) ("[A] State may not impose such greater restrictions [on police] as a matter of *federal constitutional law* when this Court specifically refrains from imposing them.") (Emphasis in original).

Thus, as an initial matter, we must consider whether the United States Supreme Court has previously addressed the issue at hand and, if so, whether defendant's argument would extend the protections of the Due Process Clause beyond any limitation recognized by the Court. We turn to those questions.

### 1.  Spencer v. Texas

In its briefing, the state relies on *Spencer v. Texas*, 385 US 554, 87 S Ct 648, 17 L Ed 2d 606 (1967), suggesting that the Supreme Court's decision in that case controls the outcome here. We recognize that *Spencer* can plausibly be read as deciding the issue raised in this case and doing so in a manner that would require us to reject defendant's position. As we will explain, however, we ultimately conclude that, although instructive, the holding *of Spencer* is not dispositive.

In *Spencer*, the Supreme Court addressed the constitutionality of a Texas law that required the same jury to decide both whether a defendant was guilty of the charged offense and, if so, whether to impose a recidivist sentence upon the defendant. Procedurally, a jury would be "fully inform[ed]" of a defendant's prior convictions during the guilt phase of the trial, but the jurors were instructed not to consider those convictions until after the jury had reached a decision as to guilt. 385 US at 556-59. The defendants in *Spencer* had argued, in essence, that permitting the jury to hear such evidence—which necessarily included evidence of convictions for conduct similar to the charged offense—violated the Due Process Clause because of the risk that jurors would vote to convict based upon a defendant's perceived propensity to commit similar crimes, rather than based upon the prosecution's evidence of the charged offense. *Id*. at 559.

The Supreme Court rejected that argument. The Due Process Clause, the Court explained, guarantees criminal defendants a fundamentally fair trial. *Id*. at 563-64. The procedure prescribed by Texas law did not fall short of that guarantee, and therefore the Supreme Court was unwilling to impose further procedural requirements as a matter of due process:

"Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. *** But it has never been thought that such cases establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the

Constitution ordains this Court with such authority. In the face of the legitimate state purpose and the long-standing and widespread use that attend the procedure under attack here, we find it impossible to say that because of the possibility of some collateral prejudice the Texas procedure is rendered unconstitutional under the Due Process Clause as it has been interpreted and applied in our past cases. As Mr. Justice Cardozo had occasion to remark, a state rule of law 'does not run afoul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar.'"

*Id*. at 563-64 (quoting *Snyder v. Commonwealth of Massachusetts*, 291 US 97, 105, 54 S Ct 330, 78 L Ed 674 (1934)).

Without more, *Spencer* might be viewed as controlling here. That is, if due process permits a prosecutor to place a defendant's prior convictions before the jury any time that there is a "legitimate state purpose" and a "long-standing and widespread use" of evidence in that manner, then it might well follow that allowing prosecutors to freely rely on those convictions for the familiar purpose of impeaching testifying defendants would raise no due process concerns. *See Spencer*, 385 US at 560-61 (noting case law permitting testifying defendants to be impeached by prior convictions); *see also id*. at 577 (Warren, C.J., concurring in part, dissenting in part) (distinguishing case at bar from cases in which testifying defendants are impeached with prior convictions).

On closer examination, however, *Spencer* discloses an ambiguity that might have some bearing here. In refusing to strike down the evidentiary rule at issue in that case, the *Spencer* majority expressly noted that Texas law permitted trial courts to exclude "particularly" prejudicial evidence:

"The defendants' [due process] interests are protected by limiting instructions, *** and by the discretion residing with the trial judge to limit or forbid the admission of particularly prejudicial evidence even though admissible under an accepted rule of evidence."

385 US at 561-62 (citing Texas opinion and secondary sources).

Some courts have concluded that that statement in *Spencer* was not important to the holding of that case; those courts have therefore upheld statutes that gave trial courts no discretion to exclude evidence of prior convictions offered for purposes of impeachment. *See, e.g.*, *Commonwealth v. Diaz*, 383 Mass 73, 78, 417 NE2d 950, 953-54 (1981) ("the language of *Spencer* about discretion to exclude has been taken as merely 'descriptive' of the practice in many States, and not as suggesting any due process infirmity when the statute or rule allowing impeachment (and the practice thereunder) gives the trial judge no discretion to exclude the convictions when offered"); *United States v. Belt*, 514 F2d 837, 847-50 (DC Cir 1975) (en banc) (stating view that the majority opinion in *Spencer* reasoned from analogy regarding the admission of prior-crimes evidence and emphasized the Court's obligation to avoid inflexibility in constitutional interpretation "where local evidentiary rules are involved"; observing that, in context, it is "unlikely that Justice Harlan intended, by his generalized reference to judicial discretion, to declare the invalidity of a statute of the kind now before us"); *Dixon v. United States*, 287 A2d 89, 94-95 (DC 1972) (upholding constitutionality of statute that made the admission of prior criminal convictions against testifying criminal defendants mandatory, stating that *Spencer*'s statement "*does not* amount to a declaration that judicial discretion to exclude prejudicial prior convictions is constitutionally required" (emphasis in original)).

Two more recent decisions by the Supreme Court itself, however, suggest that the trial court's discretion to exclude unduly prejudicial evidence may have played at least some role in *Spencer*'s conclusion that the Texas evidentiary law at issue there did not violate due process. This court identified one of those cases in *Williams*, 357 Or at 12: *Dowling v. United States*, 493 US 342, 110 S Ct 668, 107 L Ed 2d 708 (1990). In *Dowling*, the defendant was prosecuted for bank robbery, and the trial court admitted testimony regarding a prior offense that the defendant had allegedly committed, but for which he had been acquitted before his robbery trial

began. *Id*. at 343-46. The Supreme Court held that that tes-
timony did not violate the Due Process Clause. *Id*. at 352-
54. In so holding, however, the Court expressly noted that a
balancing test would protect a defendant against prejudice:

> "Dowling contends that the use of this type of evidence
> creates a constitutionally unacceptable risk that the jury
> will convict the defendant on the basis of inferences drawn
> from the acquitted conduct; we believe that the trial court's
> authority to exclude potentially prejudicial evidence ade-
> quately addresses this possibility."

*Id*. at 353.

A second case recognizing the potential value of
balancing is *Perry v. New Hampshire*, 565 US 228, 132 S Ct
716, 181 L Ed 2d 694 (2012), in which the Supreme Court
considered the due process implications of eyewitness testi-
mony where an eyewitness's out-of-court identification of a
defendant had been made under suggestive circumstances.
*See id*. at 234-35 (witness had observed defendant in police
custody through kitchen window). The defendant in *Perry*
argued that the Due Process Clause required the trial court
to make a preliminary inquiry into the reliability of the
identification before allowing the jury to hear the evidence.
*Id*. at 236 (summarizing issue). The Court held that due pro-
cess did not require such a preliminary inquiry because the
police had not been responsible for the circumstances being
suggestive. *Id*. at 248. In so holding, however, the Court
"t[ook] account of other safeguards built into our adversary
system that caution juries against placing undue weight on
eyewitness testimony of questionable reliability." *Id*. at 245.
One such safeguard specifically identified by the Court was
the authority to exclude unduly prejudicial evidence:

> "State and Federal Rules of Evidence, moreover, permit
> trial judges to exclude relevant evidence if its probative
> value is substantially outweighed by its prejudicial impact
> or potential for misleading the jury."

*Id*. at 247.

The Supreme Court's repeated reliance on that
rationale—that a trial court's discretion to exclude preju-
dicial evidence is sufficiently protective of a defendant's

due process rights—suggests to us that it remains an open question for the Court whether such discretion is necessarily *required* to afford due process. *See also Williams*, 357 Or at 17 ("[J]ust because due process is served by a particular evidentiary rule does not mean, at least necessarily, that due process is violated if that rule is not applicable."). Accordingly, we conclude that *Spencer* is not dispositive here. We therefore turn to the more general consideration of what due process requires.

### 2.   *The requirements of due process*

In determining whether "state procedural rules" that "are part of the criminal process"—such as OEC 609(1)—meet the requirements of due process, the "appropriate [analytical] framework" is set out in *Medina v. California*, 505 US 437, 443, 112 S Ct 2572, 120 L Ed 2d 353 (1992). *See Nelson v. Colorado*, 581 US 128, 134-35, 137 S Ct 1249, 197 L Ed 2d 611 (2017) (so explaining).

In that respect, we first note that defendant does not contend that his impeachment with prior convictions violated any specific guarantee of the Bill of Rights. And, as the Supreme Court has emphasized, when applied outside those specific guarantees, "due process" has a narrow scope:

> "'[B]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.' *Dowling v. United States*, 493 US [at] 352 \*\*\*; *accord*, *United States v. Lovasco*, 431 US 783, 790, 97 S Ct 2044, 52 L Ed 2d 752 (1977). The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order. As we said in *Spencer* \*\*\*, [385 US at 564], 'it has never been thought that [decisions under the Due Process Clause] establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure.'"

*Medina*, 505 US at 443-44 (alterations other than first in original); *see Clark v. Arizona*, 548 US 735, 748-49, 126 S Ct 2709, 165 L Ed 2d 842 (2006) (to same effect as *Medina*);

*Patterson v. New York*, 432 US 197, 201-02, 97 S Ct 2319, 53 L Ed 2d 281 (1977) (to same effect).

To determine whether a state rule of criminal procedure violates the Due Process Clause, *Medina* explains, the relevant inquiry is whether it "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Medina*, 505 US at 446 (quoting *Patterson*, 432 US at 202). In answering that question, "[h]istorical practice is probative of whether a procedural rule can be characterized as fundamental." *Id*.; *see Montana v. Egelhoff*, 518 US 37, 43-44, 116 S Ct 2013, 135 L Ed 2d 361 (1996) (plurality opinion) (describing historical practice as the "primary guide"). Stated in terms of the parties' dispute in this case, the question is whether OEC 609 in its current form denies defendants a procedural right so established through historical practice that it has become "fundamental." Thus, we must determine whether the OEC 403 balancing of impeachment evidence before its admission, which OEC 609 no longer allows, is so reflected in historical practice as to be fundamental in that regard. Accordingly, we next turn to what historical practice shows.

### a. Historical practice

The Supreme Court has articulated a rather demanding test for one seeking to establish that a given practice is "historical":

> "[I]n assessing that [historical] practice, we look primarily to eminent common-law authorities (Blackstone, Coke, Hale, and the like), as well as to early English and American judicial decisions. The question is whether a rule of criminal responsibility is so old and venerable—so entrenched in the central values of our legal system—as to prevent a State from ever choosing another. An affirmative answer, though not unheard of, is rare."

*Kahler v. Kansas*, 589 US 271, 279,140 S Ct 1021, 206 L Ed 2d 312 (2020) (rejecting contention that Due Process Clause required a state to provide insanity defense (citations omitted)). "Contemporary practice" may also be considered, but it is "of limited relevance to the due process inquiry." *Medina*, 505 US at 447.

It is defendant's burden to affirmatively show that the principle that he seeks to apply is "entrenched in the central values of our legal system." That is, it is not sufficient that defendant may be able to show that the state's rule is *not* deeply rooted; he must demonstrate the fundamental nature of the rule that he contends is essential to due process. As the Supreme Court explained in *Egelhoff*,

> "[i]t is not the State which bears the burden of demonstrating that its rule is 'deeply rooted,' but rather respondent who must show that the principle of procedure *violated* by the rule (and allegedly required by due process) is 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.' Thus, even assuming that when the Fourteenth Amendment was adopted the rule Montana now defends was no longer generally applied, this only cuts off what might be called an *a fortiori* argument in favor of the State. The burden remains upon respondent to show that the 'new common-law' rule *** was so deeply rooted at the time of the Fourteenth Amendment (or perhaps has become so deeply rooted since) as to be a fundamental principle which that Amendment enshrined."

518 US at 47-48 (first alteration in original; citations omitted); *see Kahler*, 589 US at 279 (following *Egelhoff*). As applied to this case, then, defendant must show a "deeply rooted" practice of requiring courts to balance prejudice against probative value before allowing the state to impeach testifying criminal defendants with their prior felony convictions, because that, in essence, is the "principle of procedure" that OEC 609 purportedly violates and that is "allegedly required by due process." *See Egelhoff*, 518 US at 47-48.

In turning to whether history discloses such a practice, we first observe, as the Court of Appeals noted, that at common law any person with a felony conviction was deemed incompetent to testify as a witness. *See, e.g.*, *Green v. Bock Laundry Mach. Co.*, 490 US 504, 511, 109 S Ct 1981, 104 L Ed 2d 557 (1989) (so explaining); Mason Ladd, *Credibility Tests— Current Trends*, 89 U Pa L Rev 166, 174 (1940) (same). Thus, as to such individuals, impeachment was historically not an issue.

That does not mean, however, that there is no decisional law from that era relevant to our assessment of

historical practices. To the contrary—there is a long line of common-law cases addressing the effect of a pardon on an individual's competency to testify. Under those circumstances, the pardon restored the witness's capacity to testify, but the conviction was admitted for the jury's consideration in evaluating that person's credibility. The case of *Rookwood's Trial*, Holt 683, 685, 90 Eng Rep 1277, 1278 (KB 1696), which involved a witness who had been pardoned by the king, stated the rule as follows: "[T]he conviction indeed might be objected to his credit, but could not be urged against his being a witness."[6]

Lord Hale expressed the rule similarly:

> "[I]f the king pardon *** offenders, they are thereby rendered competent witnesses, tho their credit is to be still left to the jury, for the king's pardon takes away *poenam & culpam in foro humano*,[7] *** but yet it makes not the man always an honest man[.]"

Sir Matthew Hale, 2 *The History of the Pleas of the Crown* 278 (1736) (citations omitted).

That rule was transplanted to the United States and widely followed until at least the middle of the twentieth century:

> "The current of American decision, following the British cases, is unbroken: an offender, if pardoned, must still face the fact that his conviction is admissible in evidence as bearing on his credibility."

*Richards v. United States*, 192 F2d 602, 606 (DC Cir 1951), *cert den*, 342 US 946, *reh'g den*, 343 US 921 (1952) (footnotes omitted); *see also Vedin v. McConnell*, 22 F2d 753, 754 (9th Cir 1927) ("The pardon in no wise negatived the implications of the conviction in respect of plaintiff's character, and the jury was entitled to knowledge of it as bearing on his credibility

---

[6] See also the more detailed report of the case in *Trial of Ambrose Rookwood*, 13 Howell's State Trials 139, 185 (KB 1696), available at https://books.google. co.uk/books?id=SwQKAAAAIAAJ&pg=PA185#v=onepage&q=pardon&f=false (reporting Lord Chief Justice's statement as "the credit of such a [pardoned] witness is left to the jury, but it is no objection to his being a legal witness") (accessed May 29, 2024).

[7] The no-longer used Latin phrase can be understood to mean, essentially, penalty and fault as matters of earthly, as opposed to spiritual, affairs.

as a witness."); *State v. Grant*, 33 Del 195, 198, 133 A 790 (Del Ct Gen Sess 1926) ("[F]or the purpose of affecting the credit of the defendant, the fact of the conviction may, therefore, be brought out either on cross-examination or in rebuttal."); *Curtis v. Cochran*, 50 NH 242, 244-45 (1870) ("The conviction is an impeachment and condemnation of his general character for truth. \*\*\* [A pardon] removes the disability [to testify], but does not change the common-law principle that the conviction of an infamous offence is evidence of bad character for truth." (Citations omitted.)); *Baum v. Clause*, 5 Hill 196, 196-97, 1843 N.Y. LEXIS 85, at \*1-3 (NY Sup Ct 1843) (although "competency is restored by the pardon, the crime still goes to the credit of the witness"); *United States v. Jones*, 26 F Cas 644, 647-48, 1824 US App LEXIS 265, at \*2-3 (CC D NY 1824) (No. 15,493) (Circuit Justice Thompson) (charging the jury: "His honor observed, he had no doubt of the efficacy of the pardon, and that [the state's witness] was now a competent witness; his credibility, however, was still a subject for the consideration of the jury."). Our review of the foregoing case law has given us no indication that the trial courts of the time were required (or even permitted) to balance the probative value of a witness's conviction history against its potential to cause prejudice before admitting that evidence for impeachment purposes, nor that trial courts were in fact exercising discretion in that regard.

Meanwhile, over the course of the nineteenth century, the general rule of incompetency for persons who had *not* been pardoned for their crimes began to change, as states enacted statutes restoring the competency of previously convicted persons. *See* Stuart P. Green, *Deceit and the Classification of Crimes: Federal Rule of Evidence 609 (A)(2) and the Origins of Crimen Falsi*, 90 J Crim L & Criminology 1087, 1110 (2000); Ladd, 89 U Pa L Rev at 174-75. The same statutes, however, typically allowed the use of a witness's conviction history to impeach the witness's credibility. *See* Green, 90 J Crim L & Criminology at 1110; Ladd, 89 U Pa L Rev at 174-75.[8] Functionally, then, the states took the

---

[8] Oregon was one of the states that removed incompetency but permitted the use of prior convictions to attack credibility. As early as 1862, the Oregon Legislative Assembly began permitting persons previously convicted of crimes to testify as witnesses, but it also expressly permitted a witness's credibility to be questioned "in every case":

common-law rule applicable to the impeachment of witnesses who had been pardoned and applied it more generally to all persons with prior convictions, without regard to whether a witness had been pardoned for any earlier offenses.

As the Supreme Court itself has noted, the consensus rule during that period—that is, before the adoption of the Federal Rules of Evidence in 1975—was that trial courts lacked discretion to bar impeachment by prior conviction:

> "The weight of authority before [Federal Rule of Evidence] 609's adoption *** admitt[ed] all felonies without exercise of judicial discretion in either civil or criminal cases. Departures from this general rule had occurred overtly by judicial interpretation, as in *Luck v. United States*, *** 348 F2d 763 ([DC Cir] 1965), or in evidence codes, such as the Model Code [of Evidence, 1942] and the Uniform Rules [of Evidence, 1953]."

*Green*, 490 US at 521-22.

Moreover, courts of that era specifically authorized the use of prior convictions to impeach criminal defendants who chose to testify in their own behalf. *See Right to cross-examine accused as to previous prosecution for, or conviction of, crime, for purpose of affecting his credibility*, 161 ALR 233 (1946) ("Even in the absence of a statute to that effect, it has generally been held proper to cross-examine the accused as to his previous conviction for the purpose of affecting his credibility[.]"); *see also Goode v. United States*, 149 F2d 377, 378 (DC Cir 1945) (no error to "allow[] the District Attorney to draw from [the defendant] on cross-examination admissions of his prior convictions on two occasions of grand larceny"); *State v. Ede*, 167 Or 640, 644, 117 P2d 235 (1941) ("[T]he state had a right to show either on the examination

---

"All persons without exception, except as otherwise provided in this title, *** may be witnesses. Therefore neither parties, nor other persons who have an interest in the event of an action, suit or proceeding, are excluded; *nor those who have been convicted of crime*; *** *although in every case, *** the credibility of the witness may be drawn in question*[.]"

The Code of Civil Procedure and Other General Statutes of Oregon § 700, 174-75 (1863) (emphases added). Furthermore, although witnesses generally could not be impeached with prior wrongful acts, a witness could be impeached with evidence disclosed "by the examination of the witness, or the record of the judgment, that he has been convicted of a crime." *Id*. at § 830, 203; *see also id*. at § 837, 205 ("a witness must answer as to the fact of his previous conviction for felony").

of the defendant or by the record of a judgment that he had been convicted of a crime."); *People v. Braun*, 14 Cal 2d 1, 6, 92 P2d 402 (1939) (no error for prosecution to ask defendant on cross-examination whether he had previously been convicted of murder, even though murder conviction was on appeal at time of trial and subsequently was reversed); *People v. David*, 12 Cal 2d 639, 646, 86 P2d 811(1939) (rule permitting witness to "be impeached by proof that he has suffered the prior conviction of a felony" "applies to a defendant who testifies in his own behalf in a criminal trial notwithstanding the fact the such evidence tends to prejudice him in the eyes of the jury"); *State v. Morgan*, 192 Wash 425, 431, 73 P2d 745 (1937) ("clearly proper" for prosecution to ask defendant on cross-examination whether he had previously been convicted of crime); *Mansbach v. United States*, 11 F2d 221, 224 (3d Cir 1926) (stating, under New Jersey law, that "if the defendant offer[s] himself as a witness, his conviction of another crime may, on cross-examination, be shown for the purpose of affecting his credibility as a witness").

Some of our own decisions from the period predating the adoption of the Oregon Evidence Code had rejected balancing more generally, reasoning that the discretionary aspect of balancing would mean that the same evidence could be treated differently by different judges. *See State v. Manrique*, 271 Or 201, 210-11, 531 P2d 239 (1975) (rejecting balancing for prior-crime evidence); *see also Smith v. Durant*, 271 Or 643, 658-60, 534 P2d 955 (1975) (rejecting balancing as to impeachment of a nondefendant witness with prior convictions, noting that "the same evidence admitted in one court might well be excluded by another," such that "the result in a case might well depend upon what court or judge it is tried before"). Thus, insofar as defendant seeks to establish a historical practice of mandatory judicial balancing before a criminal defendant's conviction history may be admitted as impeachment, neither this court's case law, nor that of the other jurisdictions discussed above, readily provides support for defendant's position.

That is not to say that defendant's concerns are his concerns alone. Despite—or perhaps due to—the widespread acceptance of impeachment by prior conviction, the

practice became subject to growing academic criticism in the last century. *See* Ladd, 89 U Pa L Rev at 184-91 (1940 law review article discussing chilling effect on a defendant's right to testify and potential for prejudice when jurors hear about prior convictions).        Notably, however, even those critical of admitting conviction history for impeachment purposes acknowledged that almost every state allowed the practice. *See id.* at 187 (when a defendant testifies, "the right of the state to prove convictions of a crime is almost universally admitted as a test of veracity"). And, although the 1942 Model Code of Evidence and the 1953 Uniform Rules of Evidence both would have given trial courts discretion to exclude impeachment evidence deemed unduly prejudicial, *see Green*, 490 US at 513 (discussing both), those specific provisions were not widely adopted.

Moreover, the concerns expressed in academic circles initially gained little traction in the courts. However, in 1965, the United States Court of Appeals for the District of Columbia Circuit held that judicial balancing for prejudice was required before criminal defendants could be impeached with their conviction histories. *Luck*, 348 F2d at 769-70; *see* Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, *Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates*, 51 FRD 315, 393 (1971) (advisory committee's note) (discretionary balancing regarding impeachment by prior convictions "finds its genesis in *Luck*"; "[p]rior to that decision, slight latitude was recognized for balancing probative value against prejudice, though some authority allowed or required the trial judge to exclude convictions remote in point of time"); Roger C. Park, *Impeachment with Evidence of Prior Convictions*, 36 Sw U L Rev 793, 796 (2008) (identifying *Luck* as the probable first decision). Significantly, the *Luck* opinion was a statutory ruling, based on the text of a District of Columbia (D.C.) Code provision. As the circuit court explained, that provision:

> "says, in effect, that the conviction 'may,' as opposed to 'shall,' be admitted; and we think the choice of words in this instance is significant. The trial court is not required to allow impeachment by prior conviction every time a defendant takes the stand in his own defense. The statute, in

our view, leaves room for the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case. * * * There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility. This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field."

348 F2d at 768 (footnotes omitted).

The authoring judge in *Luck* would later express in a law review article his view that the *Luck* decision represented a dramatic change in existing law:

"In the District of Columbia, it was common practice for the prosecution in a criminal case automatically to enter in evidence any and all prior convictions, except certain minor misdemeanors, whenever the defendant elected to appear on the witness stand in his own defense. This procedure appeared to be the established and accepted mode of proceeding, not only in the District of Columbia but almost everywhere in the United States."

Carl McGowan, *Impeachment of Criminal Defendants by Prior Convictions*, 1970 L & Soc Order 1, 1 (1970) (footnote omitted).

The *Luck* holding itself did not endure, because in 1970 Congress amended the D.C. Code to overrule that decision's holding. *See Green*, 490 US at 514 (citing District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub L 91-358, § 133(b), 84 Stat 551); Victor Gold, *Impeachment by Conviction Evidence: Judicial Discretion and the Politics of Rule 609*, 15 Cardozo L Rev 2295, 2300 (1993) (same). However, the ensuing adoption of the Federal Rules of Evidence in 1975 continued the controversy over balancing and the *Luck* decision.

The advisory committee's[9] first proposed Federal Rules of Evidence expressly rejected the *Luck* doctrine and made no provision for discretion or balancing. *See Green*, 490

---

[9] The advisory committee had been appointed by the Chief Justice of the United States Supreme Court. The committee prepared several preliminary drafts of the Federal Rules of Evidence before submitting the final version to the Supreme Court. The Court, in turn, submitted the draft rules to Congress for enactment. *See* Gold, 15 Cardozo L Rev at 2298 n 18 (summarizing process).

US at 515; Gold, 15 Cardozo L Rev at 2298-99; Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, *Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates*, 46 FRD 161, 295-99 (1969) (proposed Rule 6-09 and advisory committee's note).

Due to criticism of the first proposal's rejection of *Luck*, the advisory committee reversed course and incorporated *Luck*'s holding in its revised proposal. *See Green*, 490 US at 515-16; Gold, 15 Cardozo L Rev at 2299-300; Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, *Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates*, 51 FRD 315, 391-93 (1971) (proposed Rule 6-09 and advisory committee's note). In doing so, however, the committee failed to note or acknowledge that Congress had legislatively overruled *Luck* by amending the D.C. Code. That perceived affront to the will of Congress led to a legislative attempt to limit the rulemaking power of the Supreme Court. Gold, 15 Cardozo L Rev at 2300-01. That attempt ultimately failed. Nonetheless, the advisory committee prepared a final draft of the Federal Rules of Evidence that reverted to the original proposal and removed discretionary balancing. *See Green*, 490 US at 516-17; Gold, 15 Cardozo L Rev at 2301; *Rules of Evidence for United States Courts and Magistrates*, 56 FRD 183, 269-72 (1972) (proposed Rule 6-09 and advisory committee's note). That was the version submitted to Congress. *Green*, 490 US at 517.

FRE 609 was equally controversial in Congress. Ultimately, the version of the Federal Rules of Evidence that Congress adopted in 1975 included a version of FRE 609 that codified much of the balancing test of *Luck*. That outcome was the compromise product of a hard-fought political battle, and the result was quite controversial. *See* Gold, 15 Cardozo L Rev at 2301-08 (discussing history in detail); *id.* at 2303 ("The extent of the floor debate in the House over Rule 609(a) far exceeded that relating to any other provision in all the proposed Federal Rules of Evidence."); *id.* at 2307 (conference committee forced to reconcile essentially contradictory drafts from House and Senate).

One aspect of that compromise was that it limited what evidence would be subject to balancing when a defendant took the stand as a witness. Felonies as a general matter would be subject to some form of balancing. FRE 609(a)(1). But *any* prior conviction—whether or not a felony conviction—would be *automatically* admissible, without balancing, if the crime involved an act of dishonesty or a false statement. FRE 609(a)(2) ("[F]or any crime regardless of the punishment, the evidence *must be admitted*" if "the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.") (Emphasis added).[10]

Thus, the federal rule—along with the many states that follow that rule or something close to it—requires balancing as to at least some prior convictions: those for crimes that did not involve false statements or acts of dishonesty. *See* FRE 609. However, the federal rule and analogous state rules allow a criminal defendant to be impeached by some prior convictions without any balancing of probative value against prejudice. And in the context of convictions for dishonesty, at least, we are unaware of any case holding that the absence of balancing violates the federal Due Process Clause.

With that background in mind, we return to the question of what historical practice shows. Again, defendant has the burden of showing that trial court balancing of the probative value of impeachment evidence against its

---

[10] FRE 609 currently provides, in part:

"**(a) In General.** The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

"**(1)** for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:

"* * * * *

"**(B)** must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and

"**(2)** for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."

**Although FRE 609 has been amended in various ways since 1975, none of those amendments affect our assessment of the rule's enactment history or the degree, if at all, to which that history reflects historical practices.**

potential for prejudice—at least with regard to conviction history used to impeach criminal defendants—is a historical practice that is either "entrenched in the central values of our legal system," *Kahler*, 589 US at 279, or "so rooted in the traditions and conscience of our people as to be ranked as fundamental," *Egelhoff*, 518 US at 43. Defendant has not met that burden. To the contrary: The common-law cases regarding witnesses who had been pardoned for their crimes, as well as decisional law into the latter half of the twentieth century, show an established practice of allowing witnesses—including criminal defendants—to be impeached with prior convictions without any balancing. The novelty of the *Luck* decision and the battle over FRE 609 confirms that, as late as the mid-1970s, discretionary balancing of the sort that OEC 403 permits was far from established practice with regard to impeachment evidence. And even today, the federal rules do not permit balancing as to some types of convictions, even when offered to impeach testifying defendants. That history therefore does not show an "entrenched" practice of requiring trial courts to balance the probative value of impeachment evidence against its potential to prejudice criminal defendants who choose to testify.

Although that history weighs heavily against defendant's position, it does not end our analysis. In the absence of a historical practice, *Medina* requires us to consider "whether the [challenged] rule transgresses any recognized principle of 'fundamental fairness' in operation." 505 US at 448. (internal citation omitted). *Cf. Williams*, 357 Or at 18 (characterizing test as "the principles that animate the Due Process Clause"). We turn to that question.

b.   Fundamental fairness

As a freestanding consideration under the Due Process Clause, an assessment of "fundamental fairness"—at least with regard to the introduction of evidence—asks "whether the introduction of th[e] type of evidence [at issue] is so extremely unfair that its admission violates fundamental conceptions of justice," *Dowling*, 493 US at 352, or, stated another way, would "'so infuse[] the trial with unfairness as to deny due process of law,'" *Estelle v. McGuire*, 502 US 62, 75, 112 S Ct 475, 116 L Ed 2d 385 (1991) (quoting *Lisenba*

*v. California*, 314 US 219, 228, 62 S Ct 280, 86 L Ed 166 (1941)).

Before exploring that question with regard to the use of impeachment evidence in this case, it bears emphasizing that defendant's position is *not* that the admission of felony convictions to impeach a criminal defendant's credibility is itself fundamentally unfair.[11] Rather, defendant contends that due process requires the application of a particular procedural rule—specifically, OEC 403 balancing—as a safeguard to ensure that evidence so extremely prejudicial as to violate due process will not be admitted. Thus, this case differs from cases such as *Williams*, where the court's focus was on whether the use of other-acts evidence to prove the defendant's propensity to commit child sexual abuse was so "extremely unfair" as to violate "fundamental conceptions of justice," 357 Or at 18 (internal quotation marks omitted), and *Baughman*, where this court discussed OEC 404(4)'s potential effect of opening the door for the first time to evidence that was historically inadmissible due to its widespread recognition as unfairly prejudicial, 361 Or at 400-01 (concluding that the legislature intended for courts to apply the specific balancing test set out in OEC 403 when due process requires that OEC 404(4) evidence be subject to some form of balancing).

Nonetheless, we find it helpful to consider the specific purpose for which the trial court admitted the disputed evidence in this case: to impeach, in accordance with a state evidentiary rule, a criminal defendant's testimony with his felony conviction history. As we have noted, to determine whether due process requires a particular rule of criminal procedure—or, as relevant here, a particular rule of evidence—"we must do our best to determine how the United States Supreme Court would decide that question." *Williams*, 357 Or at 17. And it stands to reason that, if it is unlikely that the Supreme Court would ever consider a particular use of evidence so extremely unfair as to violate fundamental conceptions of justice, then it is equally or even

---

[11]  Neither has defendant ever argued that the specific impeachment evidence admitted in this case violated his constitutional rights because it was "extremely unfair," *Dowling*, 493 US at 352, or "so infused the trial with unfairness as to deny due process of law," *Estelle*, 502 US at 75.

more unlikely that the Court would require trial courts to engage in specific procedures—including OEC 403 balancing—before allowing that use in a given case.

Considering that question, although we need not endorse the state's apparent view that the admission of evidence in accordance with a state evidentiary rule will never violate due process, we see little indication that the Supreme Court would hold that permitting a defendant's testimony to be impeached with the defendant's felony conviction history violates the Due Process Clause. As our own case law suggests, the assessment of whether evidence is "extremely unfair" appears to depend on not only the character of the evidence itself, but also on the purpose for which the evidence may be used. To be sure, using defendant's felony convictions to impeach his testimony as OEC 609 contemplates arguably put "other acts" evidence before the jury, even if it is not typically characterized that way. And with regard to "other acts" in general, there are longstanding limits on the purposes for which that evidence may be used. *See Williams*, 357 Or at 8-10 (recognizing historical practice of prohibiting use of other-acts evidence to prove propensity in cases other than child sexual abuse cases); *State v. Pinnell*, 311 Or 98, 103-04, 806 P2d 110 (1991) (discussing principles); *see also* OEC 404(3) (stating general prohibition against use of evidence of "other crimes, wrongs or acts *** to prove the character of a person in order to show that the person acted in conformity" with that character). But notably, the use of prior convictions for impeachment purposes does not fall within the strict parameters of that prohibition. That is, the general prohibition against "other acts" evidence applies only if the *sole* reason for offering evidence of a person's prior acts is to show that the person has a propensity to engage in such conduct, a distinction that the evidence code itself reflects:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. *It may, however, be admissible for other purposes ***.*"

OEC 404(3) (emphasis added); *see Williams*, 357 Or at 7-10 (discussing history of courts excluding other-acts evidence

to show propensity); *State v. Johns*, 301 Or 535, 547, 725 P2d 312 (1986), *overruled in part on other grounds* by *State v. Skillicorn*, 367 Or 464, 493, 479 P3d 254 (2021) (OEC 404(3) is focused on the use of other-acts evidence for the specific purpose of proving a person's character "as a basis for the further inference that he therefore is guilty of the present charge" (internal quotation marks and citations omitted)). Here, the evidence is offered for another purpose—to impeach defendant's credibility—to which the presumptive prohibition does not apply. *See* Edward J. Imwinkelried, 1 *Uncharged Misconduct Evidence* § 1.11, 44-45 (rev ed 2017) (so noting).

We recognize that impeaching a criminal defendant with a prior conviction can give rise to concerns similar to those resulting from the use of "other acts" evidence: There is at least some risk that the jury will misuse the prior conviction as evidence that the defendant is a bad person deserving of punishment and convict the defendant in part for that reason, rather than solely due to the strength of the prosecution's case. *See, e.g.*, Park, 36 Sw U L Rev at 810 (so noting). Thus, as with "other acts" evidence that is admissible for some but not other purposes, the challenge with OEC 609 evidence is limiting its use to the purpose for which, under our system of justice, it may legitimately be considered. *Cf. Michelson v. United States*, 335 US 469, 475-76, 69 S Ct 213, 93 L Ed 168 (1948) (explaining that the reason for prohibiting character evidence is that "it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge" (footnote omitted)).

Despite that similarity, however, we cannot overlook that there also are significant differences between using "other acts" evidence to prove propensity and using prior convictions to impeach a defendant's credibility as a witness. For one, unlike propensity evidence, impeachment evidence in the form of a witness's criminal record has long been recognized as probative of credibility and therefore relevant and admissible for that purpose. In contrast, cases holding that the use of other-acts evidence raises due process

concerns have emphasized that propensity evidence, at least historically, has been deemed *irrelevant* for any legitimate purpose.

For example, in *McKinney v. Rees*, 993 F2d 1378, 1380-84, (9th Cir 1993), *cert den*, 510 US 1020 (1993), the Ninth Circuit considered whether the admission of certain evidence against the defendant, who had been accused of murdering his mother with a knife, had rendered his trial fundamentally unfair. The disputed evidence included the fact that the defendant was fascinated with knives, that he had previously possessed (but no longer possessed at the time of the murder) "double-edge, dagger-type" knives, and that "on occasion he strapped a knife to his body while wearing camouflage pants." *Id*. at 1382. Noting that it had previously held that only "if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process," *id*. at 1384 (emphasis in original; internal quotation marks and alterations omitted), the Ninth Circuit held that the admission of that character evidence, which was not only irrelevant to "any fact of consequence," but also "emotionally charged" and extensive, had rendered the defendant's trial fundamentally unfair and therefore in violation of due process, *id*. at 1383-86 (observing as to certain *other* evidence that, even though it may have been inadmissible under California's version of OEC 403 because it was more prejudicial than probative, the only relevant inquiry for purposes of due process was whether the evidence was relevant); *see United States v. Morena*, 547 F3d 191, 194-97 (3rd Cir 2008) (district court plainly erred in admitting extensive evidence of the defendant's drug-related activities in trial on weapons charges, where evidence was probative of only character and therefore not relevant to any legitimate trial issue); *see also Estelle*, 502 US 62 (rejecting due process challenge to admission of "battered child syndrome" evidence on grounds that evidence was irrelevant due to the Court's conclusion that the evidence was in fact relevant).

In addition to that distinction between admitting potentially prejudicial evidence whose relevance is undisputed, on the one hand, and prejudicial evidence that is not admissible for any legitimate purpose, on the other,

impeaching a defendant with prior convictions under OEC 609 also involves various procedural mechanisms that the Supreme Court would likely view as safeguards that help to ensure that admitting that evidence without OEC 403 balancing will not render a defendant's trial "fundamentally unfair." *Cf. Perry*, 565 US at 245 ("tak[ing] account of other safeguards built into our adversary system that caution juries against placing undue weight on eyewitness testimony of questionable reliability" when rejecting argument that due process required trial court to determine whether evidence was reliable).

First, under OEC 609, impeachment evidence is subject to restrictions intended to limit the potential for abuse by the state or misuse by the jury. The state may present "the names and nature of the crimes of which he has been convicted[.]" *State v. Wilson*, 182 Or 681, 697-98, 189 P2d 403 (1948). Typically, impeachment with a prior conviction involves asking a witness about the conviction; if the witness denies it, then the state may present the judgment of conviction. Alternatively, the state may simply introduce the judgment of conviction without first questioning the witness about it. In either event, however, nothing further is permitted. As we have summarized:

> "It is proper to ask a witness if he has ever been convicted of a crime. This may be done with or without a record of conviction being available. If the witness answers 'No,' that is the end of the interrogation. If an authenticated record to refute the negative answer is available it may be introduced to show an actual previous conviction of crime by the witness. Or, the record may be introduced in the first instance, without a preliminary question to the witness, to show previous convictions."

*State v. Rollo*, 221 Or 428, 437, 351 P2d 422 (1960). "That *** is the limit permissible by our procedure." *Id*.; *see also* Note, *Other Crimes Evidence at Trial: Of Balancing and Other Matters*, 70 Yale L J 763, 776-77 (1961) (discussing similar restrictions nationally).

Second, the jury must be given an appropriate limiting instruction. *See* OEC 105 ("When evidence which is admissible *** for one purpose but not admissible ***

for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."). As the Supreme Court explained in *Michelson*:

> "We do not overlook or minimize the consideration that 'the jury almost surely cannot comprehend the judge's limiting instruction,' which disturbed the Court of Appeals. \*\*\* However, limiting instructions on this subject are no more difficult to comprehend or apply than those upon various other subjects; for example, instructions that admissions of a co-defendant are to be limited to the question of his guilt and are not to be considered as evidence against other defendants, and instructions as to other problems in the trial of conspiracy charges. A defendant in such a case is powerless to prevent his cause from being irretrievably obscured and confused; but, in cases such as the one before us, the law foreclosed this whole confounding line of inquiry, unless defendant thought the net advantage from opening it up would be with him. Given this option, we think defendants in general and this defendant in particular have no valid complaint at the latitude which existing law allows to the prosecution to meet by cross-examination an issue voluntarily tendered by the defense."

335 US at 484-85 (internal citation omitted); *see Spencer*, 385 US at 561-63 (defendant's interests were protected in part by limiting instruction, the jury is "expected to follow instructions in limiting this evidence to its proper function," and jury instruction at issue was no more difficult for jury to understand than in *Michelson*); *see also Marshall v. Lonberger*, 459 US 422, 438 n 6, 103 S Ct 843, 74 L Ed 2d 646 (1983) (reaffirming *Spencer* and stating that "the crucial assumption underlying the system of trial by jury is that juries will follow the instructions given them by the trial judge" (internal quotation marks and citation omitted)).

Finally, a defendant's conviction history is wholly inadmissible under OEC 609 unless the defendant voluntarily chooses to testify. That renders such evidence substantially different from "other acts" evidence, which, when permitted, may be introduced in the state's case-in-chief and is a matter entirely outside the defendant's control. The admission of prior convictions, on the other hand, is something that a defendant has the power to foreclose, albeit at

the cost of forgoing the right to testify. Although we recognize the difficult tradeoff between important rights that such a choice must entail, we are charged with anticipating how the Supreme Court would rule in a case such as this, and we are unaware of any decision of the Supreme Court suggesting that having to make such decisions somehow renders the trial fundamentally unfair. Indeed, as the Court stated in *Michelson* in discussing the state's right to introduce evidence of a defendant's bad character to rebut the defendant's own evidence of good character, "[t]he price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him." 335 US at 479.[12]

Given those procedural mechanisms, as well as the Supreme Court's pronouncements addressing closely related issues, we conclude that the Supreme Court is unlikely to conclude that impeaching criminal defendants with prior felony convictions is "so extremely unfair" as to "violate[] fundamental conceptions of justice" or that doing so would "so infuse the trial with unfairness as to deny due process of law." *See Dowling*, 493 US at 354 (no due process violation in admitting evidence of prior crime for which the defendant had been acquitted); *Spencer*, 385 US at 564-69 (no violation of due process to permit jury to hear, during guilt phase, evidence of defendant's prior convictions relevant only to sentencing); *cf. McGautha*, 402 US at 183 (rule allowing impeachment with defendant's prior convictions did not unconstitutionally burden defendant's right to testify). And even if the Supreme Court might find particular

---

[12] To be clear, defendant does not contend that the threat of impeachment with his conviction history unconstitutionally burdened his right to testify, and we do not consider that issue here. Although we have not had occasion to consider that issue under the Oregon Constitution, we note that that argument, as distinct from defendant's due process argument, has previously been considered by the Supreme Court under the Sixth Amendment. *See, e.g.*, *Ohler v. United States*, 529 US 753, 759-60, 120 S Ct 1851, 146 L Ed 2d 826 (2000) (possibility of impeachment with prior convictions may deter defendant from testifying, but it does not *unconstitutionally* burden the defendant's right to testify); *McGautha v. California*, 402 US 183, 215, 91 S Ct 1454, 28 L Ed 2d 711 (1971) (stating that, although "a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions," "it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify").

impeachment evidence "extremely unfair" in a specific case—a question not raised by defendant's appeal—we find no basis to conclude that the Supreme Court would dictate that trial courts conduct OEC 403 balancing in all cases in which it is requested so as to ensure against that occurrence.[13] As a result, we are not persuaded by defendant's argument that the Due Process Clause requires trial courts to conduct OEC 403 balancing before admitting a criminal defendant's conviction history as impeachment evidence under OEC 609.

C.   *The dissent*

The dissent does not challenge our conclusion that due process does not require a trial court to conduct OEC 403 balancing before admitting OEC 609 impeachment evidence against a criminal defendant. Instead, without refuting the reasoning that brought us to that conclusion, the dissent argues that we should reach a different conclusion, one that answers—or at least partially answers—a different question. *See* ___ Or at ___ (Walters, S. J., dissenting) (slip op at 20:2-3) (advocating for rule that trial courts "must, *among other things*, balance the probative value of the proffered evidence against it prejudicial effect" (emphasis added)). In the dissent's view, we have erroneously focused on whether the Court of Appeals erred in accepting defendant's argument that OEC 403 balancing is required, when, the dissent contends, what is at issue is in this case is whether the trial court erred in accepting the state's argument and admitting evidence of defendant's felony conviction history without balancing the probative value of that evidence against its potential for prejudice. *Id*. at ___ (slip op at 2:4-8).

We respectfully disagree that our opinion—which considers whether the trial court's ruling was in error, not

---

[13] We are not suggesting that trial courts have no authority to consider a defendant's contention that the use of specific impeachment evidence in a particular case is so extremely unfair as to violate due process, but defendant has not made that contention here. And, although the state in this case has argued that evidence admissible under the terms of OEC 609 does not rise to that level, it also does not suggest that OEC 609 or any other authority requires a trial court to admit evidence that does violate due process. But, because defendant has not presented that argument, our decision in this case should not be viewed as foreclosing it, nor as determining the precise form of analysis that such an argument would require.

whether the trial court or the Court of Appeals accepted the wrong party's argument—is misdirected. We instead think that, by posing the wrong questions and relying on case law that is largely or even wholly distinguishable, the dissent's approach is misguided. We address those various issues in turn.

### 1. *The dissent poses the wrong questions.*

We begin with the question presented in this case. The dissent expressly acknowledges that, "at trial and on appeal, defendant has argued that due process requires 'balancing under OEC 403[.]'" *Id*. at ___ (slip op at 9:12-14). But the dissent does not address the question raised by that argument. Rather, based on an erroneous assessment that defendant's position has never been that the requisite balancing includes OEC 403's discretionary component—under which trial courts have discretion to exclude evidence whose potential for prejudice substantially outweighs its probative value[14]—the dissent seemingly finds room to embark on a line of inquiry that wholly sidesteps defendant's actual argument in favor of questions no one raises in this case: whether OEC 609 unconstitutionally compels courts to admit evidence that will deprive defendants of their right to a fundamentally fair trial, and, if so, what procedure are trial courts constitutionally required to follow to ensure that such evidence is not admitted?

The dissent's root concern is that, in light of OEC 609's mandatory wording, it might be viewed as somehow overriding a defendant's due process rights. *See id*. at ___ (slip op at 2:10-11) (emphasizing that "due process overrides OEC 609 and requires trial courts to exclude 'extremely unfair' evidence"). If that were that the only point that the

---

[14] In the trial court, defendant cited this court's decisions in *Williams* and *Baughman*, and argued that, consistent with those decisions, due process required the trial court to subject the state's impeachment evidence to OEC 403 balancing before allowing its admission. And, as we have explained, those decisions collectively established that, when due process requires trial courts to conduct balancing, OEC 404(4)(a) requires that they conduct OEC 403 balancing in accordance with its terms.___ Or ___(slip op at 35:2-10)); *see Baughman*, 361 Or at 398 (so stating). Because the terms of OEC 403 expressly grant trial courts discretion whether to exclude potentially prejudicial evidence, defendant's argument for OEC 403 balancing necessarily included an argument that due process required courts to have that discretion, contrary to the dissent's understanding.

dissent wished to make, then it would require little response. It is axiomatic that defendant's right to due process overrides any state rule of criminal procedure that would render his trial fundamentally unfair. But the dissent does not stop at that simple observation. Rather, it relies on that observation as jumping-off grounds for a second due process inquiry, one undertaken without prompting by the parties or the assistance of any briefing: Because OEC 609 cannot constitutionally serve as a gateway for the admission of "extremely unfair" evidence, what procedure must trial courts follow to ensure that the admission of OEC 609 evidence will not be fundamentally unfair, if it is *not* the procedure dictated by the terms of OEC 403 as defendant contends?

Notably, the dissent undertakes that inquiry even though it recognizes that, when evaluating a due process challenge to the admission of evidence, the focus must be on the evidence itself and whether its admission would be so "extremely unfair" as to deprive the defendant of a fundamentally fair trial. *Dowling*, 493 US at 352; *see id.* at ___ (slip op at 10:21 - 11:1) (agreeing that "due process does not require trial courts to exclude evidence proffered under OEC 609 *unless its admission would deny the defendant a fair trial*" (emphasis added)). Yet, despite that recognition, the dissent would nonetheless conclude that a particular *procedure* is required, one at least rooted in OEC 403, if not OEC 403 balancing *per se*. *See id.* at ___ (slip op at 19:21 - 20:3) (calling for procedural overlay to OEC 609). For the reasons already articulated, we do not conduct that inquiry in this case, much less draw any conclusion as to what process may apply.

2. *The dissent's reliance on our own case law is misplaced.*

The dissent purports to find guidance in our own case law, specifically *Williams* and *Baughman*, and federal decisions construing the Due Process Clause, but the dissent misunderstands the significance of that case law or places weight on it that it cannot bear. We begin by discussing our own case law, after which we will address the dissent's misplaced reliance on federal case law that does not support the dissent's reasoning.

First, the dissent spends considerable time discussing our decisions in *Williams* and *Baughman* before concluding that, "when the state offers other acts evidence for character or noncharacter, propensity or nonpropensity purposes, due process requires that the trial court engage in balancing to consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Id.* at ___ (slip op at 7:12-8:2). As we will explain, however, that statement greatly overstates the potential significance of those decisions here.

In *Williams*, this court properly applied the Supreme Court's framework by first identifying the procedural rule that the defendant contended was "so fundamental as to be embodied in the federal constitution," which in that case was the rule against using "other acts" evidence to prove the defendant's character and related propensity to commit the charged offense. 357 Or at 17. Here, the procedural rule that defendant contends is constitutionally required is one that would compel a trial court to conduct OEC 403 balancing before admitting evidence of a criminal defendant's felony conviction history to impeach his credibility. However, the dissent never explores the historical underpinnings of any such rule.

We recognize that, as the dissent correctly notes, this court in *Williams*, having *not* found a historical practice to support the defendant's proposed rule in that case—one that would require OEC 403 balancing before allowing other-acts evidence in child sexual abuse cases—turned to other "fundamental conceptions of justice" before concluding that balancing was constitutionally required in that context. *See Williams*, 357 Or at 17-18 (because relevant historical practice was "not as clear," turning to "principles that animate the Due Process Clause"). However, there are two reasons that our holding in *Williams*—concluding that balancing was required before other-acts evidence could be admitted—cannot sustain the dissent's view.

The first reason that *Williams* does not support the dissent's view is that, as we have already observed, the challenged evidence in *Williams* was specifically offered to prove the defendant's character and his propensity to act

accordingly, *i.e.*, to commit the charged crimes. 357 Or at 7. Although we ultimately concluded that such evidence would be admissible (subject to balancing) in child sexual abuse cases, our analysis was against the backdrop that, in all other contexts, "other acts" evidence that was probative only of a defendant's bad character has historically been recognized as both irrelevant to any legitimate purpose and extraordinarily prejudicial. Here the challenged evidence is defendant's conviction history, which the state offered to impeach his testimony. In contrast to the propensity evidence at issue in *Williams*, (1) conviction history has long been deemed highly relevant to a person's credibility; and (2) defendant's OEC 403-based objection to that evidence is that there is a *risk* that the jury will improperly rely on it as demonstrating propensity, not that the evidence will be specifically admitted for that purpose. Thus, although there is some risk that the jury will use the impeachment evidence improperly, we do not view that risk to be of the same magnitude as the concerns that informed our ultimate holding in *Williams*, nor do we think that the Supreme Court would equate the two.

The second reason that the dissent's reliance on *Williams* is misplaced is that, as discussed above, the dissent fails to take account of defendant's argument, which is that due process requires that OEC 609 evidence be subject to *OEC 403* balancing, not merely that due process requires the exclusion of evidence that is so extremely unfair that it violates fundamental conceptions of justice. As we explain above, ___ Or at ___ (slip op at 35:17-21), it is one thing to contend that a specific evidentiary item is "extremely unfair"; it is another thing altogether to contend that trial courts must engage in specific procedures to ensure that unfair evidence is not admitted. And, whatever legal test due process may require in this context, there is no basis to conclude, as the dissent contends, that the factors that due process requires trial courts to consider are, "among other things," those dictated by OEC 403, much less that courts must be permitted to exclude relevant evidence whenever "its probative value is substantially outweighed by the danger of unfair prejudice[.]" ___ Or at ___ (Walters, S. J., dissenting) (slip op at 19:21-20:3)

We recognize that *Williams* stated, with regard to propensity evidence admitted under OEC 404(4), that due process requires OEC 403 balancing. 357 Or at 18. *But see id.* at 19 n 17 (declining to reach issue of whether due process "balancing" may in any way be distinct from that permitted by OEC 403). But, as the dissent implicitly acknowledges, that decision has little bearing in regard to impeachment evidence offered under OEC 609. First, as we have discussed, other-acts evidence offered to prove propensity has a long history of being categorically inadmissible, whereas impeachment evidence has historically been recognized as relevant and probative. Thus, the dissent's effort to characterize conviction history as the equivalent of other-acts character evidence is unpersuasive. Second, as this court's subsequent decision in *Baughman* makes clear, the requirement that other-acts evidence be subject to OEC 403 balancing is a matter of statutory construction—specifically construction of OEC 404(4)—not constitutional interpretation. 361 Or at 399-400 (stating that, where due process requires balancing before evidence may be admitted under OEC 404(4), the legislature intended that OEC 403 supply the standard, not due process itself, as the latter understanding would render OEC 404(4)(d) redundant). Thus, neither *Williams* nor *Baughman* supports the view that due process requires a balancing of the OEC 403 factors before admitting OEC 609 evidence, whether according to the terms of OEC 403, as defendant contends, or as factors to be considered "among other" unidentified factors, as the dissent contends. ___ Or at ___ (slip op at 20:2).[15]

We agree that the procedural question that the dissent identifies is an important one that should be addressed

---

[15] The dissent's reliance on federal law fares no better. As we explain above, ___ Or at ___ (slip op at 18:5-17), although the Supreme Court in *Dowling* mentions the availability of FRE 403, it neither holds that balancing under that provision is a due process requirement nor that evidence that is excludable under that provision is evidence that would deprive a person of a fair trial. Indeed, the Supreme Court might be viewed as having affirmatively held that evidence that must be excluded under FRE 403—which, like OEC 403 weighs the probative value of evidence against its potential for unfair prejudice—does not necessarily violate a person's right to due process. That is because the Court in *Dowling* upheld the Third Circuit's ruling, applying the harmless-error rule applicable to subconstitutional violations, that the district court's erroneous application of FRE 403 had been harmless.

in an appropriate case, but we disagree that this is such a case. And, even if this were an appropriate case in which to decide how courts determine when evidence is "extremely unfair," we might hesitate to accept the dissent's conclusion that due process necessarily requires trial courts to balance OEC 609 evidence using the factors found in OEC 403, an assessment that even the dissent concedes "may not, alone, determine whether the admission of the proffered evidence would deny a defendant a fair trial[.]" *Id.* at ___ (slip op at 12:7-10) (stating that balancing under OEC 403 "is an essential consideration," but not identifying any other considerations).

Ultimately, the dissent disagrees with the conclusion that we reach, but the dissent does not demonstrate that we either have identified the incorrect principles to defendant's case or that we have erroneously applied them. And, while the legislature may well be interested in further exploring the issues raised by the dissent, particularly those attributed to *amici*, this court is not at liberty to address them itself, at least not when doing so would require us to interpret the Due Process Clause more broadly than we think that the Supreme Court would interpret it. *See, e.g.*, *Sullivan*, 532 US at 772 (rejecting Arkansas Supreme Court's conclusion that it could construe the federal constitution to provide greater protection than United States Supreme Court's own precedents would provide).

### III.  CONCLUSION

In deciding whether a particular rule of criminal procedure is required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, we must determine whether either (1) historical practice has established the rule as a fundamental principle of justice; or (2) the failure to honor the proposed rule would otherwise violate a principle entrenched in the central values of our legal system. Defendant has not met his burden of establishing such a principle, nor has our review of the case law disclosed one. And, although we also have considered whether there are grounds to think that the Supreme Court would conclude that admitting defendant's felony conviction history as impeachment evidence was so extremely unfair that

it violated fundamental conceptions of justice or infused the trial with such unfairness as to deny due process of law, it is ultimately unnecessary to decide that issue, as it is not an argument that defendant has ever advanced in this case. Rather, it suffices for us to conclude that due process does not require OEC 403 balancing to protect against that possibility. It follows that the Court of Appeals erred in holding that OEC 403 balancing was required. Accordingly, we reverse that court's decision and affirm the circuit court judgment.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

**WALTERS, S.J.,** dissenting.

Respectfully, I dissent.

The constitutional issue that this case presents is whether OEC 609(1) must be applied as written or whether it is subject to a due process overlay that permits a trial court to exclude evidence proffered under OEC 609, and, if so, whether, in determining if exclusion is required, the court must, as a step in its analysis, balance the probative value of the proffered evidence against its potential for unfair prejudice. The state's position is that, in enacting OEC 609, "Oregon has made the constitutionally permissible determination that a witness's qualifying convictions must be admitted when offered to challenge the credibility of the witness." Defendant's position, as I understand it, is that, to comply with due process, OEC 609 must provide room for a trial court to exclude proffered evidence and, in determining whether to do so, the court must engage in balancing.

Rather than explicitly rejecting the state's position and addressing the implications of doing so, the majority states defendant's position more narrowly and rejects it. The majority does not endorse the state's view, but it also does not address it. Instead, the majority characterizes defendant's argument as an argument that due process requires application of a particular procedural rule—OEC 403—and requires that a trial court conduct "balancing under OEC 403" before admitting evidence proffered under OEC 609. By that, the majority means that a trial court must apply "OEC 403 in accordance with its terms—that is, balancing

the probative value of evidence against its potential for unfair prejudice *and* making the discretionary decision whether to exclude the evidence[.]" __ Or at __ n 1 (emphasis added) (slip op at 1 n 1). So characterized, the majority rejects defendant's argument and concludes that the Court of Appeals erred in accepting it.

That, at bottom, is the basis for my dissent. The issue before this court is not whether the Court of Appeals erred, but, rather, whether the trial court erred when it accepted the state's argument that OEC 609 must be applied as written and admitted evidence of defendant's prior convictions without balancing the probative value of evidence against its potential for unfair prejudice. That, in my view, was error. I write for three reasons: (1) to explicitly affirm what the majority apparently assumes but does not articulate—that is, that due process overrides OEC 609 and requires trial courts to exclude "extremely unfair" evidence;[1] (2) to explain why, in determining whether proffered evidence rises to that level, a trial court must, as a step in its analysis, engage in balancing; and (3) to call on the legislature to explicitly align the Oregon rules of evidence with those in other state and federal courts law to ensure defendants' rights to a fair trial.

The path to the conclusion that due process overrides OEC 609 begins with the Supremacy Clause. OEC 609 is unconstitutional if it "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Medina v. California*, 505 US 437, 446, 112 S Ct 2572, 120 L Ed 2d 353 (1992)

---

[1] I reach that conclusion, in part, from the following statement of the majority:

"We are not suggesting that trial courts have no authority to consider a defendant's contention that the use of specific impeachment evidence in a particular case is so extremely unfair as to violate due process, but defendant has not made that contention here."

__ Or at __ n 13 (slip op at 43 n 13). Thus, the majority does not take the position that admitting prior felony convictions to impeach a defendant is never so unfair as to violate due process. The majority also states that "it is axiomatic that defendant's right to due process overrides any state rule of criminal procedure that would render his trial fundamentally unfair," __ Or at __ (slip op at 45:13-15), but it does not expressly recognize that, by requiring a trial court to admit evidence proffered under OEC 609, OEC 609 constitutes such a rule.

(quoting *Patterson v. New York*, 432 US 197, 202, 97 S Ct 2319, 53 L Ed 2d 281 (1977)). One fundamental principle of justice is that a defendant is entitled to a fair trial and to the exclusion of the type of evidence that "is so extremely unfair that its admission violates fundamental conceptions of justice," *Dowling v. United State*s, 493 US 342, 352, 110 S Ct 668, 107 L Ed 2d 708 (1990) (internal quotation marks omitted), or, stated another way, evidence that would "'so infuse[] the trial with unfairness as to deny due process of law,'" *Estelle v. McGuire*, 502 US 62, 75, 112 S Ct 475, 116 L Ed 2d 385 (1991) (quoting *Lisenba v. California*, 314 US 219, 228, 62 S Ct 280, 86 L Ed 166 (1941)). The concept of unfair prejudice "'speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" *Old Chief v. United States*, 519 US 172, 180, 117 S Ct 644, 136 L Ed 2d 574 (1997). Consequently, although OEC 609 requires trial courts *to admit* evidence of qualifying convictions, due process overrides that rule of evidence and requires trial courts *to exclude* such evidence when its admission would deny the defendant a fair trial. *See State v. Moore*, 349 Or 371, 389, 245 P3d 101 (2010) ("in all events, no evidence may be admitted that would violate state and federal constitutional standards").

Had the majority explicitly recognized that due process and, thereby, the right to a fair trial override OEC 609, then the majority would better have understood the next question before it: When a defendant objects to the admission of evidence proffered under OEC 609 as violating the defendant's right to due process, and the trial court must decide whether to exclude it on that basis, must the trial court undertake an analysis that requires it to engage in balancing?

In answering that question, I find it helpful to begin with this court's decisions in *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), and *State v. Baughman*, 361 Or 386, 393 P3d 1132 (2017), two cases in which this court interpreted OEC 404(4), and, in doing so, considered the dictates of due process. OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a)  [OEC 406 through 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b)  The rules of evidence relating to privilege and hearsay;

"(c)  The Oregon Constitution; and

"(d)  The United States Constitution."

In *Williams*, the state offered evidence of the defendant's "other acts" to prove his propensity to commit the charged act. The defendant argued that the Due Process Clause required balancing under OEC 403. This court agreed, holding that "the only way that a court can ensure that the admission of 'other acts' evidence is not unfairly prejudicial and a violation of 'fundamental concepts of justice' is to conduct OEC 403 balancing." 357 Or at 18. That conclusion, the court reasoned, followed from the United States Supreme Court's decision in *Dowling* and from other federal court decisions, including *United States v. LeMay*, 260 F3d 1018 (9th Cir 2001). *Id*.

In *Dowling*, the government had offered other acts evidence for a noncharacter purpose—to prove identity under FRE 404(b). The Supreme Court considered whether admission of that type of evidence "failed the due process test of 'fundamental fairness.'" 493 US at 352. The Court recognized that the admission of such evidence could pose a "constitutionally unacceptable risk that the jury will convict the defendant on the basis of inferences drawn from the [other acts evidence]," but it upheld its admission against the defendant, because it " believe[d] that the trial court's authority to exclude potentially prejudicial evidence adequately addresse[d] this possibility." *Id*. at 353.

In *LeMay*, the Ninth Circuit upheld the constitutionality of FRE 414, a federal rule that, in cases in which the defendant is accused of child molestation, permits the admission of other acts of child molestation on any matter to which it is relevant. The court reasoned that the right to a

fair trial was safeguarded by the application of FRE 403, a federal rule that, like OEC 403, permits trial courts to weigh the prejudicial effect of proffered evidence against its probative value. 260 F3d at 1030. The Ninth Circuit explained that the introduction of "other acts" evidence "can amount to a constitutional violation only if its prejudicial effect far outweighs its probative value" and that, "as long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded." *Id.* at 1026-27.

Based on its understanding of those federal cases, this court held in *Williams* that due process requires a trial court to conduct balancing under OEC 403 before admitting "other acts" evidence to prove a defendant's character and propensity to commit the charged act under OEC 404(4). 357 Or at 18-19. The court explicitly left open, however, whether that balancing was "traditional" or "subconstitutional" balancing, or a narrower, more exacting "due process" balancing. *Id.* at 19 n 17. The trial court had admitted the contested evidence, and this court said that evidence that was admissible under "traditional" balancing also would be admissible "under any distinct 'due process' balancing test." *Id.*

In *Baughman*, the state had offered other acts evidence for a number of noncharacter, nonpropensity purposes—to establish the defendant's intent, motive, common plan or scheme, and the absence of mistake or accident. In this court, the parties assumed that, before admitting that evidence, the trial court was required to balance the prejudicial effect of the proffered evidence against its probative value, but they disagreed about the legal standard that that balancing entailed. The court understood the question before it to be whether the balancing under OEC 403 is "traditional" or "subconstitutional" balancing—balancing that gives the trial court discretion to exclude evidence whose probative value is substantially outweighed by its prejudicial effect—or, as the state posited, "due process" balancing that requires the trial court to exclude propensity evidence under OEC 404(4) "if its admission would render the trial

fundamentally unfair as a matter of law." *Baughman*, 361 Or at 397.

This court decided that, in enacting OEC 404(4)(a), the legislature intended the courts to conduct balancing under OEC 403, "according to its terms," meaning that, "[u]nder OEC 404(4)(a) and OEC 403, trial courts may exclude evidence, in the exercise of their discretion, when they determine that its probative value is substantially outweighed by the danger of unfair prejudice." *Williams*, 361 Or at 402. The court reasoned that OEC 404(4)(a) and OEC 404(d) "provide two independent bases for excluding other acts evidence" and two different legal standards for doing so. *Id*. OEC 404(4)(a) gives the trial court discretion to exclude otherwise relevant evidence after conducting balancing, and OEC 404(4)(d) makes exclusion of otherwise relevant evidence nondiscretionary when, as a matter of law, its admission would render the trial fundamentally unfair.[2] *Id*.

Thus, under *Williams* and *Baughman*, when the state offers other acts evidence for character or noncharacter, propensity or nonpropensity purposes, due process requires that the trial court engage in balancing to consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. The court has *discretion* to exclude evidence if its probative value is substantially outweighed by its prejudicial effect. But in the narrow circumstance in which the trial court determines that the prejudicial effect of the proffered evidence so far outweighs its probative value that its admission would render the trial fundamentally unfair, then due process *requires* its exclusion as a matter of law. *See LeMay*, 260 F3d at 1026

---

[2] The court noted, however, that it was

"not entirely clear to us that 'traditional' balancing and 'due process' balancing are as different as the parties assume that they are. *** [B]oth standards are intended to ensure a trial that is fundamentally fair. If a trial court were to determine, in the exercise of its discretion, that the probative value of other acts evidence was substantially outweighed by the danger of unfair prejudice, but, nevertheless, were to admit that evidence, that might well result in a trial that an appellate court would deem fundamentally unfair. We think it important to note that *** no court, state or federal, has distinguished between the balancing required under codified evidentiary rules and some narrower 'due process' balancing."

361 Or at 402 n 7.

(where prejudicial effect of evidence "far outweighs" proba-
tive value, constitutional violation occurs). In other words,
under *Williams* and *Baughman,* there are two different legal
standards for the admission of other acts evidence—but no
matter which legal standard applies, balancing is the trial
court's starting point for determining the admissibility of
the proffered evidence.

　　In this case, defendant does not contend that OEC
404(4) applies to the admission of his past convictions;
rather, he contends that, in interpreting that rule, this court
has decided that due process requires "balancing under
OEC 403" before other acts evidence can be admitted. As
noted, the majority understands defendant's argument to be
that a trial court must balance the probative value of prof-
fered evidence against its potential for unfair prejudice *and*
must have discretion to exclude the evidence whenever its
unfair prejudicial effect substantially outweighs its proba-
tive value. Thus, the majority characterizes the question in
this case as whether due process requires both a particular
*mode of analysis*—a balancing of the probative value of prof-
fered evidence against its potential for unfair prejudice—
*and* a particular *legal standard*—discretion to exclude the
evidence whenever its unfair prejudicial effect substantially
outweighs its probative value. I disagree with the majority's
framing. If the majority were to address and explicitly reject
the state's position that application of OEC 609 is manda-
tory and hold that due process gives a trial court authority
to exclude such evidence when its admission would deny a
defendant a fair trial, then the majority would be entitled to
proceed to the question of whether, in entertaining defen-
dant's objection to admission of evidence of his prior convic-
tions, the trial court was required to consider the probative
value and unfair prejudicial effect of that evidence, and to
do so without regard to whether that mode of analysis is cor-
rectly described as "balancing under OEC 403." And even
the majority's exclusive focus on defendant's argument does
not obviate the need for that inquiry.

　　The majority is correct that, at trial and on appeal,
defendant has argued that due process requires "balancing
under OEC 403," but defendant does not define that term

and never argues that due process requires that trial courts have discretion to exclude evidence proffered under OEC 609 when, in their discretion, they deem the prejudicial effect of that evidence to outweigh its probative value. And, in this case, the state takes a different position than it took in *Baughman*. In *Baughman*, the state accepted that the mode of analysis set out in OEC 403—the balancing of probative value and prejudicial effect—was required before other acts evidence could be admitted under OEC 404(3) for noncharacter, nonpropensity purposes. Here, however, the state contends that trial courts must admit—*and do not have authority to exclude*—qualifying evidence proffered under OEC 609. Thus, because the state contends that admission of evidence proffered under OEC 609 is mandatory, the state necessarily takes the position that trial courts do not have authority to engage in balancing to determine whether to exclude such evidence, and the state does not brief the issue of the nature of the balancing—or any other mode of analysis—that a trial court would be permitted or required to conduct should that authority exist. As this court explained in *Williams* and *Baughman,* "balancing under OEC 403" can be understood to mean "traditional" or "due process" balancing—that is, as a mode of analysis that must be conducted both when a defendant asks a trial court to exercise its discretion to exclude evidence as well as when a defendant argues that the proffered evidence must be excluded as a matter of law. Particularly given the state's argument at trial and on appeal—that trial courts must admit qualifying evidence proffered under OEC 609 without engaging in any balancing to satisfy any legal standard—I am loath to read defendant's argument as taking a position that would foreclose consideration of a pressing constitutional question important to courts and counsel: When a defendant objects to the admission of evidence of the defendant's prior convictions as violating the defendant's right to due process, is the trial court required to balance the probative value of the evidence against its unfair prejudicial effect? When defendant argues that due process requires trial courts to "engage in balancing under OEC 403," I understand defendant to mean that, to ensure a defendant's constitutional right to a fair trial, due process requires trial courts to balance the probative

value of evidence proffered under OEC 609 against its prejudicial effect.

To be as clear as I can be, I agree, as I state above, that due process does not require trial courts to exclude evidence proffered under OEC 609 unless its admission would deny the defendant a fair trial. But, once this court decides, as it must, that trial courts have authority to determine whether that *legal standard* is met, I see this case as presenting a second question—that is, whether, in deciding how to rule on an objection to evidence proffered under OEC 609, trial courts must include, as part of its *mode of analysis,* a balancing of the probative value and the prejudicial effect of the proffered evidence.

*Dowling* and its progeny provide the constitutional answer to that question, along with its historical underpinnings. As noted, in *Dowling*, the Supreme Court started from the premise that it is a fundamental principle of justice that a defendant is entitled to a fair trial and to the exclusion of the type of evidence that "is so extremely unfair that its admission violates fundamental conceptions of justice." 493 US at 352. In *Dowling*, the government had offered other acts evidence for a noncharacter purpose—to prove identity under FRE 404(b). The Court considered whether admission of that type of evidence "failed the due process test of 'fundamental fairness.'" *Id*. The Court recognized that the admission of such evidence could pose a "constitutionally unacceptable risk that the jury will convict the defendant on the basis of inferences drawn from the [other acts evidence]," but it upheld its admission against the defendant it "believe[d] that the trial court's authority to exclude potentially prejudicial evidence adequately addresses this possibility." *Id*. at 353. In *LeMay*, the Ninth Circuit explained that the introduction of "other acts" evidence "can amount to a constitutional violation only if its prejudicial effect far outweighs its probative value" and that, "as long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded." *Id*. at 1026-27. In *Williams*, this court took that reasoning one step further and held that due process requires balancing

under OEC 403 to protect against admission of such evidence when offered to prove a defendant's character and propensity to commit the charged act. In *Baughman*, this court accepted that due process also requires balancing to protect against the admission of other acts evidence when offered for a noncharacter, nonpropensity purpose. The outcome of that balancing may not, alone, determine whether the admission of the proffered evidence would deny the defendant a fair trial, but it is an essential consideration in deciding whether admission would be so "extremely unfair" that it would violate due process.

I do not know why the majority is hesitant to reach that same conclusion here, and, instead, treats other acts evidence offered under OEC 609 so differently than this court has treated other acts evidence offered under OEC 404. All other acts evidence implicates not only the right to fair trial but also the presumption of innocence, *Spencer v. State of Texas*, 385 US 554, 575, 87 S Ct 648, 17 L Ed 2d 606 (1967) (Warren, J., concurring); the principle that a defendant "be tried for what he did, not for who he is," *United States v. Myers*, 550 F2d 1036, 1044 (5th Cir 1977); and the requirement of proof beyond a reasonable doubt, *In re Winship*, 397 US 358, 364, 90 S Ct 1068, 25 L Ed 2d 368 (1970).[3] The majority recognizes that the admission of evidence of a testifying defendant's prior convictions under OEC 609 can give rise to a risk of misuse, but it sees "significant differences

---

[3] Justice Warren recognized the relationship between those principles in his concurring opinion in *Spencer*, stating that "[r]ecognition of the prejudicial effect of prior-convictions evidence has traditionally been related to the requirement of our criminal law that the State prove beyond a reasonable doubt the commission of a specific criminal act." 385 US at 575 (Warren, J., concurring). An authority on the Federal Rules of Evidence did likewise, stating as follows:

"The propensity rule shields the jury from evidence that it would likely overvalue or otherwise mishandle, while the proof beyond a reasonable doubt requirement ensures that factual uncertainties are resolved in favor of the accused. Like the reasonable doubt standard, the propensity rule is an essential corollary to the presumption of innocence."

Mark A. Sheft, *Federal Rule of Evidence 413: A Dangerous New Frontier*, 33 Am Crim L Rev 57, 81 (1995) (footnotes omitted).

Those principles are in play even when evidence is not expressly offered for a propensity purpose. As the Supreme Court recognized in *Old Chief*, whenever evidence of past convictions is offered for a nonpropensity purpose, there is a danger that that evidence may be "arresting enough to lure a juror into a sequence of bad character reasoning" and therefore be unfairly prejudicial. 519 US at 173.

between using 'other acts' evidence to prove propensity and using prior convictions to impeach a defendant's credibility as a witness." __ Or at __ (slip op at 38:4-5). The majority takes the position that evidence of the former may not be relevant for any legitimate purpose, whereas evidence of the latter is always relevant to prove credibility, and it says that there is a difference between "admitting potentially prejudicial evidence whose relevance is undisputed, on the one hand, and prejudicial evidence that is not admissible for any legitimate purpose, on the other[.]" __ Or at __ (slip op at 39:12-14).

That those differences exist does not mean that, when other acts evidence is offered for the nonpropensity purpose of impeachment, a trial court must engage in a different analysis than it would if the evidence were offered to prove propensity or for another nonpropensity purpose. As this court explained in *Williams*, trial courts will be presented with a spectrum of evidence and its admission will depend on the differing probative value and prejudicial effect of that evidence:

> "At one end of the spectrum, 'other acts' evidence that is offered for nonpropensity purposes—*i.e.,* to prove motive, intent, identity, or lack of mistake or accident—generally will be admissible as long as the particular facts of the case do not demonstrate a risk of unfair prejudice that outweighs the probative value of the evidence. At the other end of the spectrum, as the state recognizes, when 'other acts' evidence goes only to character and there are *no* permissible inferences the jury may draw from it, it is more likely that the evidence will be excluded. Such evidence generally will have little or no cognizable probative value, and the risk that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime will be substantial."

357 Or at 19-20 (emphasis in original) (citation and internal quotation marks omitted). Whether offered to prove character or offered for impeachment or another noncharacter purpose, evidence of past convictions may or may not be relevant. And, whether offered to prove character or offered for impeachment or another noncharacter purpose, due process may require that relevant evidence of past convictions be

excluded. The purpose for which the evidence is offered does not change the nature of the analysis that a trial court must use to make that determination.

Evidence offered for nonpropensity purposes generally will have greater legitimate probative value than evidence offered only to prove propensity, but that does not mean that there is not a need to consider the extent of the probative value of the evidence in relation to its prejudicial effect. For example, in *McKinney v. Rees*, 993 F2d 1378 (9th Cir 1993), one of the cases cited by the majority, other acts evidence was offered to prove that the defendant was lying (in other words, to impeach his credibility) and that he had had an opportunity to commit the charged offense. The Ninth Circuit held that, despite the fact that the prosecution had offered that evidence for those relevant nonpropensity purposes, the only inference that the jury could have drawn from the evidence was that the defendant was the type of person who would commit the charged offense, and that fact rendered the defendant's trial fundamentally unfair in violation of the Due Process Clause. *Id*. at 1382-83, 1386.

In *LeMay*, the Ninth Circuit explained its decision in *McKinney* as follows:

> "In *McKinney*, we granted a writ of habeas corpus and overturned a murder conviction where the petitioner's trial had been infused with highly inflammatory evidence of almost no relevance. *See McKinney*, 993 F2d at 1384-85. LeMay, of course, emphasizes that *McKinney* held that the ban on propensity evidence is of constitutional magnitude. What he misses, however, is the fact that we held that such evidence will only *sometimes* violate the constitutional right to a fair trial, if it is of no relevance, or if its potential for prejudice far outweighs what little relevance it might have. Potentially devastating evidence of little or no relevance would have to be excluded under [FRE] 403. Indeed, this is exactly what [FRE] 403 was designed to do. We therefore conclude that as long as the protections of [FRE] 403 remain in place so that district judges retain the authority to exclude potentially devastating evidence, [FRE] 414 is constitutional."

*Id*. at 1026-27 (emphasis in original). In other words, the fact that evidence of a testifying defendant's prior convictions

may have high probative value in one case does not mean that similar evidence will be equally probative in another case. For that reason, a trial court must have authority to determine whether the value of prior conviction evidence to prove a fact at issue is of such little relevance and is so outweighed by the danger of unfair prejudice that the admission of that evidence would deny the defendant a fair trial, and it must have authority to exclude the evidence on that ground.

Similarly, the majority emphasizes the fact that "impeachment evidence is subject to restrictions intended to limit the potential for abuse by the state or misuse by the jury" may be a factor that a trial court will want to consider in determining whether admission of such evidence would deny the defendant a fair trial, __Or at __ (slip op at 39:14 - 40:1). But the existence of those restrictions does not convince me that balancing is not also required. The majority discusses the following restrictions: (1) the fact that only the "names and nature" of the prior crimes of conviction are admissible; (2) the fact that the jury must be given a limiting instruction cautioning against the use of the evidence for an improper purpose; and (3) the fact that a defendant can avoid admission of the evidence by voluntarily choosing not to testify. __ Or at __ (slip op at 40:1 - 42:8). I agree that those restrictions may have the benefit of limiting potential misuse of the evidence, but they do not relieve trial courts of their responsibility to prevent abuse or misuse of evidence by excluding unfairly prejudicial evidence. Nor are they, even in combination, so protective of a defendant's right to a fair trial that they obviate the need for the trial court to conduct balancing.

As to the first restriction cited by the majority, even when limited to the "name and nature," prior conviction evidence may be more or less probative or prejudicial depending on the prior crime and the elements of the charged crime. Therefore, the fact that only the name and nature of the crime may be introduced does not eliminate the potential for misuse of the evidence. With respect to the second restriction, I note that the courts in *Dowling* and *LeMay* did not view the availability of a limiting instruction as sufficient to protect against an unfair trial. Instead, those courts relied on the rule permitting trial courts to balance the probative value of

the evidence against its prejudicial effect and to exclude particularly prejudicial evidence as the basis for their decisions. *Dowling*, 493 US at 353; *LeMay*, 260 F3d at 1031.

Finally, I do not think that the fact that a defendant can avoid admission of evidence of past convictions by choosing not to testify changes the calculus. Forbearance of a constitutional right is not a price that a defendant should be required to pay to avoid the risk that the prejudicial effect of the evidence proffered so far outweighs its probative value that he would be deprived of a fair trial.

The majority cites *Michelson v. United States*, 335 US 469, 479, 69 S Ct 213, 93 L Ed 168 (1948), for the proposition that "[t]he price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him." Perhaps that was a correct statement in that context of that case. In *Michelson*, the defendant chose to testify and produced evidence of his good character. Fair play permitted the government to answer in kind. But a defendant who testifies that the charged conduct did not occur does not open that door. A defendant who denies having committed the charged offense is exercising a constitutional right to testify.

For me, the conclusion that due process protects the right to a fair trial by requiring trial courts to exclude evidence that is "extremely unfair" compels the conclusion that, in analyzing whether exclusion is required, a court must "balance[e] the probative value of evidence against its potential for unfair prejudice." That analysis may not be the end of the trial court's analysis, but it is surely the beginning. I see the United States Supreme Court, our federal courts, and states throughout this land as in full agreement, and I would hold that the trial court's contrary ruling was erroneous.[4]

---

[4] Federal courts are required to weigh the probative value of prior conviction evidence against its prejudicial effect before deciding whether to admit it. FRE 609(1)(B) provides that prior conviction evidence "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." And even before the adoption of FRE 609, federal courts engaged in balancing. *See, e.g.*, *Gordon v. United States* 383 F2d 936, 940-941 (DC Cir 1967) (setting out factors that a court should consider in exercising discretion as to whether probative value of a prior conviction outweighs its prejudicial effect).

In criticizing the majority for failing to agree that the trial court erred, I do not mean to minimize the significance of its apparent recognition that OEC 609 is subject to due process and that trial courts must exclude extremely unfair evidence proffered under that rule if its admission would deny a defendant a fair trial. In recognizing that due process overlay, the majority goes a long way toward ensuring that OEC 609 does not violate "fundamental conceptions of justice." At the same time, however, it is important to recognize that, as *amici curiae* see it, "a long way" is not far enough. *Amici* argue that "rules allowing for impeachment by prior convictions replicate witness competency laws by systematically silencing witnesses with criminal records—who are disproportionately people of color—due to racial bias at each stage of policing and criminal proceedings." They also inform us that the premise that prior convictions provide information about witnesses' credibility "is unsupported by empirical research." To the contrary, *amici* assert, research shows "that jurors tend to rely on prior convictions for the improper purpose of assessing a criminal defendant's culpability" and that evidence of prior convictions "can also trigger implicit and explicit biases among factfinders."

That research certainly provides a reason for the legislature to reconsider the bright line that it drew when it enacted and when the voters amended OEC 609. And it also reminds us that, as a court, we must be mindful that we cannot uphold rules, even longstanding rules, that are "offensive to our judicial sense of what is fundamentally fair in the context of criminal prosecutions." *Watkins v. Ackley*, 370 Or 604, 631, 523 P3d 86 (2022) (internal quotation marks omitted). If there ever were a practice of admitting evidence of a testifying defendant's convictions without permitting a trial court to exclude that evidence if it would deny a defendant a fair trial, that practice has long been replaced, not

---

The facts in this case demonstrate the importance of that inquiry. Defendant was charged with first-degree rape. He expressed his desire to testify at his trial, and he argued that evidence that he had previously been convicted on two counts of first-degree sexual abuse would be unduly prejudicial and that the trial court should conduct balancing to determine whether the evidence should be admitted. In the alternative, defendant offered to make a judicial admission that he had committed prior felonies if the court would preclude the state from naming them. The trial court denied defendant's requests.

only in select locations, but across this nation. Oregon is an outlier, and there is more that Oregon can do to fulfill its obligation to see "that a jury's decision is based on the evidence and not on racial or other similar biases," *id*. at 632, and to ensure that, whatever important policies OEC 609 promotes, they give way to the right to a fair trial.

As one small step to that end, I would hold that, when the state proffers evidence under OEC 609 and the defendant objects to its admission, the trial court must determine whether admission of that evidence would violate the defendant's right to a fair trial and, in doing so, must, among other things, balance the probative value of the proffered evidence against its prejudicial effect.

For the foregoing reasons, I respectfully dissent.

Duncan and Masih, JJ., join in this dissenting opinion.